*214 OPINION OF THE COURT
Abdus-Salaam, J.
When a defendant pleads guilty to a crime, he or she generally must move to withdraw the plea or otherwise object to its entry prior to the imposition of sentence to preserve a challenge to the validity of the plea for appellate review (see People v Toxey, 86 NY2d 725, 726 [1995]; People v Claudio, 64 NY2d 858, 858-859 [1985]). In a line of cases beginning with People v Lopez (71 NY2d 662 [1988]), however, we clarified the existence of a narrow exception to the preservation requirement in rare cases where the defendant lacks a reasonable opportunity to object to a fundamental defect in the plea which is clear on the face of the record and to which “the court’s attention should have been instantly drawn,” such that “the salutary purpose of the preservation rule is . . . not jeopardized” (id. at 666). On this appeal, we must apply the foregoing principles to determine whether, prior to the final imposition of his sentence, defendant had a practical ability to challenge the validity of his guilty plea on the theory that it was induced by the promise of an unlawful sentence, for such an ability to object would preclude the application of the exception to the preservation rule delineated in Lopez and its progeny. On the record before us, we hold that defendant had a reasonable opportunity to attack the legality of his guilty plea in the court of first instance on the same grounds now advanced on appeal. Because defendant did not take advantage of that opportunity, he failed to preserve his current claim for appellate review.
I.
After his arrest and indictment on drug sale charges, defendant Christian Williams entered into a negotiated plea bargain *215 with the People. Specifically, at a scheduled court proceeding, defense counsel announced that the People had offered a recommended sentence of three years in prison in exchange for defendant’s guilty plea to criminal sale of a controlled substance in the third degree (see Penal Law § 220.39 [1]). The court asked defense counsel “[w]hat period of prosecution [sic]” had been negotiated, and counsel answered, “It was the minimum, I believe.” When the court asked “[w]hy would it be the minimum,” the prosecutor replied, “On my note it indicates that[,] for [defendant], the post-release supervision time would be two years post-release supervision.” Relying largely on the People’s apparent belief in the appropriateness of their proposed disposition, the court agreed to offer defendant a three-year prison term and a two-year period of postrelease supervision in exchange for his guilty plea.
In the course of the ensuing plea colloquy, the court told defendant about the sentence to be imposed, saying:
“As you came into court today, you were charged with the crime to which you pled guilty but I hear that there is a predicate felony statement, so you theoretically could have received up to 12 years, is it?
“I lost my sentence chart when we transferred courtrooms so I don’t know. I think it is up to 12 years.
“Let’s assume it is up to 12 years based on your prior criminal history.
“You’ve been given a chance to plead guilty and you are going to receive a three-year sentence with two years post-release supervision.
“Do you understand that?”
Defendant answered, “Yes.” The court immediately asked whether defendant “had a chance to speak with” and had, “in fact, spoken with [defense counsel] today and on other days” about his case, such that counsel had “explained to [defendant] various legal rights and [his] options with regard to this case.” Defendant responded in the affirmative.
Later in the plea proceeding, the court delivered the following warning to defendant:

*216
“Listen carefully.

“Predicate felony conviction today.

“If there is a third felony conviction, in theory at least, that would be your third felony conviction and . . . three felony convictions in theory is a big deal problem for anybody in your position.
“Do you understand that?” (Emphasis added.)
Defendant indicated that he understood.
Next, the court informed defendant that, to receive a three-year prison term, he had to meet certain conditions during the period of his release prior to sentencing. Specifically, the court told defendant that he had to truthfully discuss his case with the Department of Probation, refrain from committing new crimes and return to court for sentencing. The court further stated:
“Pay attention. . . .
“If you comply with those three conditions ....
“then you are guaranteed the three years with the two years post-release supervision.
“If you violate any of those conditions, I’ll decide what’s the nature of the violation, whether it is true or not and if I decide that you violated one of the conditions, I don’t have to give you the three years with the two years. I might, but I don’t have to, and I could theoretically sentence you up to 12 years.
“If you violate any of three conditions and I decide that you did violate one of those conditions or all of them or some of them, you will not get your plea back, your plea will remain and I’ll do what I think is appropriate having decided the validity of the supposed violation.”
Defendant responded that he understood this explanation of the conditions of the plea and the consequences of failing to fulfill them.
The court proceeded to arraign defendant on a predicate felony statement which was filed by the People and alleged that he had a predicate felony conviction for attempted criminal possession of a weapon in the second degree. Defendant declined to challenge the validity of that predicate felony conviction, and he was adjudicated a second felony offender *217 previously convicted of a violent felony. The court declared, “He’s a violent predicate which will put him in the range which will make the sentence that I promised a legal sentence.” The court ordered an adjournment of approximately two months for fulfillment of the plea conditions and sentencing.
Significantly, though, contrary to the court’s statement, while a three-year prison term is within the lawful sentencing range for a second felony drug offender convicted of third-degree criminal sale of a controlled substance (see Penal Law § 70.70 [3] [b] [i]), it was not a sentence lawfully available to defendant in light of his distinct predicate status. Rather, because defendant was a second felony drug offender previously convicted of a violent felony, he faced a statutory sentencing range of 6 to 15 years in prison on his third-degree drug sale conviction (see Penal Law § 70.70 [4] [b] [i]). But, the court was not informed of this issue and never indicated that it learned of the potential problem on its own.
Apparently, at some point after the plea proceeding, defendant was arrested for marijuana and trespass offenses. About three weeks after the entry of defendant’s plea, the court held a hearing pursuant to People v Outley (80 NY2d 702 [1993]) to determine whether defendant had violated the terms of his plea agreement. At the hearing, a police officer testified that the officer had arrested defendant upon seeing him smoking marijuana in the lobby of a public housing building. In response to that testimony, defendant presented a notarized letter from his aunt, who alleged that she was a resident of the building at issue and that defendant had been in her apartment at the time of the arrest. The court provided the defense with a short recess to enable the aunt to testify at the hearing, but at the end of the recess, defense counsel notified the court that the defense would rest without calling defendant’s aunt to the stand. After hearing the parties’ arguments, the court found that defendant had violated the terms of the plea by engaging in misconduct constituting criminal possession of marihuana in the fifth degree (see Penal Law § 221.10 [1]).
About a month later on the date of the scheduled sentencing proceeding, the parties appeared in court and discussed the People’s written submissions in support of enhancing defendant’s sentence. Defense counsel informed the court that he had not reviewed those submissions. The court said, “[0]bviously the sentence is going to be enhanced. I announced that the last time.” Nonetheless, the court adjourned the case so that the *218 court and counsel could have more time to review the People’s arguments.
Two weeks later, the parties appeared before the court for sentencing. Early in the proceeding, the court reiterated that defendant had violated the terms of his plea deal, and the court noted that, based on the People’s written submissions, it appeared that defendant had tried to arrange for the presentation of false evidence of an alibi in connection with his postplea marijuana offense. After the prosecutor’s argument in favor of an enhanced sentence, the court told defendant and defense counsel that they could “say anything [they] wantfed] on the issue of the appropriate sentence within the range that the law allows, and the circumstances - Counsel interrupted and commenced his argument in opposition to the enhancement of defendant’s sentence, positing that the evidence at the Outley hearing had not revealed misconduct that warranted an enhanced sentence. Defendant declined to make any statement about the proposed sentence enhancement, and after a brief exchange between counsel and the prosecutor, the parties brought their arguments to a close.
The court again summarized the conditions of the plea and reiterated its prior finding that defendant had failed to abide by those conditions when he committed the marijuana offense. Noting that it was discussing an “enhanced sentence,” the court condemned defendant’s efforts to present a false alibi to cover up his violation of the plea conditions. The court stated, “So he’s sentenced to 6 years [in prison], which is an appropriate enhancement in view of all of the things that went on related to this case,” adding that defendant would also serve a two-year term of postrelease supervision. Counsel asked the court to “note [his] exception” without elaborating on the grounds for the objection, and the court so noted it. The court then repeated its pronouncement of the sentence and concluded the proceeding. Subsequently, defendant appealed.
A divided panel of the Appellate Division reversed the judgment, on the law, vacated defendant’s guilty plea and remanded the matter to Supreme Court for further proceedings (see People v Williams, 123 AD3d 240, 241-247 [1st Dept 2014]). The Court concluded that defendant’s claim fell within the exception to the preservation rule because Supreme Court’s alleged error in promising defendant an unlawful three-year prison term in exchange for his guilty plea constituted a due process violation which presented a question of law for appel *219 late review despite the absence of proper preservation (see id. at 244, citing People v Louree, 8 NY3d 541, 545-546 [2007]). On the merits, the Court ruled that the lower court’s error affected the voluntariness of defendant’s plea, not simply his sentencing expectations, and that therefore vacatur of the plea was the only proper remedy (see id. at 245-247).
Two Justices dissented and voted to affirm (see id. at 247-250 [Tom, J.P., dissenting]). In the dissent’s view, defendant had to, and failed to, preserve his challenge to the legality of his guilty plea because the exception to the preservation rule does not apply where, as here, a defendant’s claim implicates only his or her sentencing expectations and not the voluntariness of the plea itself (see id. at 247-248). The dissent further opined that defendant’s claim lacked merit because the court’s imposition of a lawful six-year prison term within the range of punishments promised in the event that defendant violated the terms of the plea agreement met his legitimate sentencing expectations, notwithstanding that the court’s promise of a three-year prison term based on his potential compliance with those terms would have resulted in an illegal sentence for the offense to which he pleaded guilty (see id. at 248-250). One of the Appellate Division dissenters granted the People leave to appeal (2015 NY Slip Op 62556[U] [1st Dept 2015]), and we grounds. now reverse on preservation grounds.
II.
"Preservation — or, more precisely, the lack of preservation— frequently accounts for the disposition of criminal cases in this Court” (People v Hawkins, 11 NY3d 484, 491 [2008]), and we enforce the preservation doctrine with equal regularity in the trial and plea contexts, remaining mindful that the necessity of preservation is the rule rather than the exception (see e.g. People v Leach, 26 NY3d 1154, 1154 [2016]; People v Crowder, 24 NY3d 1134, 1136-1137 [2015]; People v Clemons, 49 NY2d 795, 796 [1980]; People v Pascale, 48 NY2d 997, 997-998 [1980]; People v Warren, 47 NY2d 740, 741 [1979]; People v Delaney, 48 NY2d 972, 973-974 [1979]; People v Adams, 46 NY2d 1047, 1047-1048 [1979]). Thus, we have held that, generally, “in order to preserve a challenge to the factual sufficiency of a plea al-locution there must have been a motion to withdraw the plea under CPL 220.60 (3)” (Lopez, 71 NY2d at 665; see Claudio, 64 NY2d at 858-859). And, “[u]nder certain circumstances, this preservation requirement extends to challenges to the volun- *220 tariness of a guilty plea” (People v Peque, 22 NY3d 168, 182 [2013]; see People v Tyrell, 22 NY3d 359, 363-364 [2013]; People v Murray, 15 NY3d 725, 726 [2010]; People v Toxey, 86 NY2d 725, 726 [1995]; Delaney, 48 NY2d at 973-974). On the other hand, in People v Lopez (71 NY2d 662 [1988]), we concluded that, where a pleading defendant’s recitation of the facts of his or her offense clearly casts doubt on his or her guilt and the court makes no further inquiry, the defendant does not have to preserve a claim of fatal error in the allocution because, as noted above, “the court’s attention should have been instantly drawn to the problem, and the salutary purpose of the preservation rule is arguably not jeopardized” {id. at 666). In People v Louree (8 NY3d 541 [2007]), we adopted a variant of the Lopez exception applicable to the defendant’s claim that his plea was involuntary under People v Catu (4 NY3d 242 [2005]) based on the particular circumstances of the defendant’s plea and sentencing proceedings (see Louree, 8 NY3d at 546).
The Appellate Division in the instant case relied principally on Louree for its determination that defendant did not need to preserve his claim. In doing so, that Court viewed Louree as holding that a defendant never has to preserve a claim that the court violated due process by accepting a guilty plea without informing the defendant of the direct consequences of the plea (see Williams, 123 AD3d at 244 [“While such a challenge (to a plea) must ordinarily be preserved by a motion to withdraw the plea under CPL 220.60 (3), this does not apply where the trial court failed to fulfill its obligations to ensure that a plea conformed with due process”], citing Louree, 8 NY3d at 545-546; see also id. at 242 [“First, defendant’s constitutional claim that his plea violated due process because it was induced by an illegal promise need not be preserved”]). But, the Appellate Division misapprehended our decisions in Louree and subsequent cases, which clearly do not categorically exempt due process claims from the preservation rule in the plea context.
In that regard, in Louree, we excused defendant’s failure to preserve his Catu claim not because the claim implicated due process, but because the defendant had no practical ability to assert that the plea was invalid prior to the imposition of sentence. Specifically, while we stated that, “where a trial judge does not fulfill the obligation to advise a defendant of post-release supervision during the plea allocution, the defendant *221 may challenge the plea as not knowing, voluntary and intelligent on direct appeal, notwithstanding the absence of a post-allocution motion,” we explained that we were applying an exception to the preservation rule because we could not “shut our eyes to the actual or practical unavailability of either a motion to withdraw the plea” or a CPL 440.10 motion, noting that “a defendant can hardly be expected to move to withdraw his plea on a ground of which he has no knowledge” (8 NY3d at 545-546). We further observed that, “if the trial judge informs the defendant of postrelease supervision during the course of sentencing, as also happened here, a defendant may no longer move to withdraw the plea since a motion may only be made under CPL 220.60 (3) ‘[a]t any time before the imposition of sentence’ ” (id. at 546). Hence, our decision to relieve the defendant of any preservation obligation in Louree stemmed in significant part from the defendant’s inability to object to the legality of his plea prior to the final imposition of sentence, and not just from the nature of his due process claim. As a result, Louree does not support the Appellate Division’s apparent conclusion that, because defendant here attacked the volun-tariness of his plea on due process grounds, his claim was categorically exempt from the preservation rule.
Importantly, after Louree was handed down and prior to the Appellate Division’s decision here, we dispelled any notion that Louree establishes such a broad exception to the preservation rule. So it was that, in People v Peque (22 NY3d 168 [2013]), we reiterated the general rule that, even where the defendant challenges a plea on voluntariness and due process grounds, he or she must preserve that challenge via timely objection depending on the circumstances of the case, and we clarified that, “[t]aken together, Lopez and Louree establish that where a defendant has no practical ability to object to an error in a plea allocution which is clear from the face of the record, preservation is not required” (id. at 182 [emphasis added]). In that very decision, we also concluded that a defendant could have preserved, and failed to preserve, his contention that the trial court’s failure to apprise him that deportation was a potential consequence of his plea rendered the plea involuntary (see id. at 183).
Thus, as Louree indicates and Peque crystallizes, if a defect in a plea allocution is clear on the face of the record and implicates due process, the defendant nonetheless must preserve his or her claim that the defect made the plea *222 involuntary unless the defendant has no practical ability to do so. Moreover, after the Appellate Division decided this case, we again emphasized that a defendant must object to the court’s failure to apprise him or her of the consequences of a guilty plea if he or she has the opportunity to lodge such an objection (see People v Crowder, 24 NY3d 1134, 1136-1137 [2015]; see also People v Conceicao, 26 NY3d 375, 381 [2015] [“If a defendant has an opportunity to seek relief from the sentencing court, he must preserve his challenge to the plea”]).
It is no wonder, then, that even defendant does not embrace the Appellate Division’s rationale for dispensing with the preservation requirement here, but merely argues that he is entitled to the benefit of the exception to the preservation rule based on the absence of a chance to raise his claim below. In that regard, defendant contends that Supreme Court violated due process and improperly induced his guilty plea because it failed to tell him at the plea proceeding that it could not legally order a three-year prison term, which the court promised him in exchange for his guilty plea and his compliance with the plea conditions, upon defendant’s conviction for third-degree drug sale in light of defendant’s status as a second felony drug offender with a prior violent felony conviction. By defendant’s reckoning, since the court never announced that the promised sentence was illegal and his lawyer did not display any recognition of the unlawfulness of the proposed sentence on the record, neither defendant nor counsel had any practical ability to challenge the voluntariness of the plea on grounds of which they were unaware.
However, even assuming that the error alleged by defendant impacts the voluntariness of the plea as opposed to his sentencing expectations — an issue hotly contested by the parties and unaddressed by our decision today — defendant could have raised his current claim prior to the final imposition of sentence in Supreme Court, and therefore, he was obligated to, and failed to, preserve his claim.[1]
As our previous summary of the record shows, and contrary to the assertions of our dissenting colleagues (see dissenting op at 232), the defense had multiple opportunities to preserve de *223 fendant’s current challenge to his plea and seek clarification of the matter, as such opportunities arose from, inter alia: the court’s comment at the plea proceeding about its uncertainty of the legality of the promised sentencing options; the court’s statements at the plea proceeding about the determinative nature of defendant’s predicate felony offender status; the numerous adjournments, the Outley hearing and the post-hearing court appearance that transpired between the plea and sentencing proceedings, which could have allowed counsel and defendant to inquire further into the legality of the promised sentencing options and defendant’s understanding of the plea; and the court’s comments at sentencing, which offered an opening for counsel to confirm the legality of the court’s sentencing options and its effect on the validity of the plea. By failing to seize upon these opportunities to object or seek additional pertinent information, defense counsel failed to preserve defendant’s claim for appellate review (see generally Conceicao, 26 NY3d at 381; Crowder, 24 NY3d at 1136-1137; see People v Murray, 15 NY3d 725, 727 [2010] [where a practical ability to object to the validity of the plea arose at the sentencing proceeding, defendant’s failure to object or move to withdraw the plea rendered his claim unpreserved]; cf. Conceicao, 26 NY3d at 383-384 [observing that, although defendants did not have to preserve claims for plea vacatur due to lack of information and circumstances supplying a practical ability to object, adjournments in the proceedings and further pre-sentence litigation strengthened attorneys’ and defendants’ comprehension of the consequences of the pleas]).[2]
*224 Similarly, to the extent defendant suggests that the court also improperly made him a firm promise of a three-year prison term even if he committed a new crime, he could just as easily have preserved that claim as well. At the court appearance following the Outley hearing, the court announced its intention to enhance the sentence beyond the promised three-year prison term based on defendant’s commission of a new marijuana offense. Later, at sentencing, the court again referenced its plan to increase the sentence, and prior to the end of the proceeding, it proposed to increase the sentence to a six-year prison term. In response, defendant and his attorney could have objected to the court’s plan to dishonor the purported promise of a three-year prison term in connection with defendant’s violation of the plea conditions if such a promise, or the legal viability of it, had motivated defendant to plead guilty. Since the defense did not inquire into the legality of a three-year prison term in the event of a violation of the plea terms or demand that the court honor the alleged promise, defendant failed to preserve any complaint about the court’s enhancement of the sentence and advisements regarding what would occur in the event of a violation.
Finally, given defendant’s failure to preserve his present claim that his plea must be vacated, we express no opinion on the merits of the claim, and we remit the case to the Appellate Division, which may decide whether to review defendant’s un-preserved challenge to the validity of his plea as a matter of discretion in the interest of justice. As a result, just as our decision on procedural grounds should not be read to suggest that defendant would have been entitled to vacatur of his plea had he preserved his current claim, it also should not be taken as an endorsement of Supreme Court’s handling of the proceed *225 ings below, which all parties agree was far from ideal irrespective of the ultimate validity of the plea.[3]
III.
Because defendant, via counsel, could have raised his current challenge to the propriety of his guilty plea prior to the imposition of sentence, he was obligated to preserve his claim, and his failure to object to the plea in the court of first instance precludes our review of his present contention. Accordingly, the order of the Appellate Division should be reversed and the case remitted to that Court for consideration of the facts and issues raised but not determined on the appeal to that Court.

. Notably, if, as the People maintain, defendant’s claim raises an issue pertaining to his sentencing expectations and not the voluntariness of his plea, it is undisputed that such a claim would have to be preserved to at least the same extent as a challenge that genuinely relates to the voluntariness of the plea.

. Our dissenting colleagues contend that “ [i] t is particularly unjust to require preservation in a case such as the one before us, where the error escaped discovery of all those involved and trained in the law — -the judge, prosecutor and defense counsel” (dissenting op at 231). This comment appears to be a mere rephrasing of the dissent’s argument that defendant lacked a practical opportunity to raise his current claim before the court of first instance. We simply disagree because the record discloses several instances where, in light of the court’s comments and the course of the proceedings, the defense could have made an objection based on, or sought clarification of, the legality of a three-year prison term upon his conviction. If the dissent means to suggest that defendant did not have to preserve his claim, regardless of any opportunity to do so, because the record does not affirmatively reveal that he and his attorney had actual knowledge that the court committed an alleged error, such an assertion is untenable. Although we have excused the failure to use the objection method of preservation to preserve a claim of a fundamental defect in a plea based in part on the lack of an opportunity for the defendant to have discovered the error, we have never held, either in the *224 plea context or elsewhere, that the defendant’s lack of actual knowledge that an error has occurred, despite an opportunity to learn of the error, may excuse the defendant from having to preserve his or her claim via objection. Indeed, such a theory would swallow the preservation doctrine whole, thereby eviscerating an essential limit on our jurisdiction (see People v Turriago, 90 NY2d 77, 80 [1997]; People v Kelly, 5 NY3d 116, 119 [2005]), because virtually every defendant could rely on a record silent on the subject of the defendant’s actual knowledge to argue that he or she did not in fact comprehend the erroneous nature of the court’s actions and therefore had no obligation to object. We reject this sweeping knowledge-based exception to the preservation rule.

. Notably, the legislature is aware that illegal sentences may sometimes be imposed and has created a mechanism to address this problem. That mechanism, CPL 440.40, authorizes the court, upon the People’s motion, to vacate an illegal sentence within one year of imposition. Had defendant received the illegal sentence that was to his benefit on his third-degree drug sale conviction, the People would have had only one year to move to vacate the illegal sentence (see Matter of Campbell v Pesce, 60 NY2d 165, 168-169 [19831).