[40 NYS3d 94]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTIAN WILLIAMS, Appellant.

First Department, October 27, 2016

### APPEARANCES OF COUNSEL

*Richard M. Greenberg, Office of the Appellate Defender*, New York City (*Anita Aboagye-Agyeman* and *Alexandra Keeling* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Beth Fisch Cohen* of counsel), for respondent.

### OPINION OF THE COURT

Tom, J.

The Court of Appeals, in its remittitur of this case (*People v Williams*, 27 NY3d 212 [2016], *revg* 123 AD3d 240 [1st Dept 2014]), asks this Court to decide whether defendant's unpreserved challenge to the validity of his plea should be reviewed as a matter of discretion in the interest of justice (*id.* at 224).

After his arrest and indictment on drug sale charges, defendant entered into a negotiated plea bargain. In exchange for his guilty plea, defendant was promised a three-year determinate sentence followed by a two-year period of postrelease supervision with the proviso that he not commit another crime before sentence was pronounced, among other conditions. The court and the parties mistakenly believed that the three-year sentence was the minimum permissible sentence.

During the plea colloquy, the court explicitly advised defendant that if he violated the conditions, "I don't have to give you the three years with the two years. I might, but I don't have to, and I could theoretically sentence you up to 12 years." In response to the court's questions, defendant stated that he understood and that he had spoken to his counsel about the plea deal and understood the conditions of the plea and the consequences of failing to fulfill them.

The three-year prison term was not a sentence lawfully available to defendant, because of his predicate felony status. Because defendant was a second felony drug offender previously convicted of a violent felony, he faced a statutory sentencing range of 6 to 15 years in prison on his third-degree drug

sale conviction (*see* Penal Law § 70.70 [4] [b] [i]). But, the court was not informed of this issue and never discovered it on its own.

Before the sentencing, defendant was arrested for marijuana and trespass offenses. The court held a hearing pursuant to *People v Outley* (80 NY2d 702 [1993]) to determine whether defendant had violated the terms of his plea agreement. After hearing testimony from a police officer and the parties' arguments, the court found that defendant had violated the terms of the plea by engaging in misconduct constituting criminal possession of marijuana in the fifth degree (*see* Penal Law § 221.10 [1]).

At the sentencing proceeding, the court reiterated that defendant had violated the terms of his plea deal, and the court noted that, based on the People's written submissions, it appeared that defendant had tried to suborn perjury and arrange for the presentation of false evidence of an alibi in connection with his postplea marijuana offense. At no point did defendant challenge the legality of the initial promised three-year determinate sentence or the sentencing range. The court then stated, "So he's sentenced to 6 years [in prison], which is an appropriate enhancement in view of all of the things that went on related to this case." Subsequently, defendant appealed.

A divided panel of this Court reversed the judgment, on the law, vacated defendant's guilty plea and remanded the matter to Supreme Court for further proceedings (*see People v Williams*, 123 AD3d at 241-247). The majority concluded that the plea had violated due process because it was induced by an illegal sentence and that preservation therefore was not required (*id.* at 244). On the merits, the Court ruled that Supreme Court's error had affected the voluntariness of defendant's plea, and therefore vacatur of the plea was the only proper remedy (*see id.* at 245-247).

Two Justices dissented and voted to affirm (*see id.* at 247-250 [Tom, J.P., dissenting]). According to the dissent, defendant had to preserve his challenge to the legality of his guilty plea, and the court's imposition of a lawful six-year prison term was within the range of sentence promised in the event that defendant violated the terms of the plea agreement and therefore met his legitimate sentencing expectations (*see id.* at 248-250).

The Court of Appeals reversed this Court on preservation grounds, holding that defendant was "obligated to preserve his claim" (27 NY3d at 225), and had a "reasonable opportunity to

attack the legality of his guilty plea in the court of first instance" but did not "take advantage of that opportunity," and thus "failed to preserve his current claim for appellate review" (*id.* at 214).

The Court of Appeals remitted this case for consideration of the facts and issues raised but not determined on the prior appeal to this Court. Specifically, we are to consider whether to review defendant's unpreserved challenge to the validity of his plea as a matter of discretion in the interest of justice (*id.* at 224). We decline to do so.

Defendant contends that his guilty plea was not knowing, voluntary and intelligent because the initial promised sentence which induced the plea was illegal, and because the plea conditions were ambiguous. The dissent concludes that the plea violated defendant's due process rights because "the evident misunderstanding by the trial court and by the parties in this matter [regarding the correct sentencing range], result[ed] in defendant's incomplete understanding of the implications of entering a guilty plea" (quoting *Williams* at 247).

It is settled that when a criminal defendant waives the fundamental right to trial by jury and pleads guilty, due process requires that the waiver be knowing, voluntary and intelligent (*People v Catu*, 4 NY3d 242, 245 [2005]). However, defendant's present due process claim is without merit. The Court of Appeals has implied that the illegality of the promised sentence does not, in itself, render a defendant's guilty plea unknowing and involuntary (*see People v Williams*, 87 NY2d 1014, 1015 [1996]). In *Williams*, the Supreme Court, sua sponte, resentenced defendant to $3\frac{1}{2}$ to $10\frac{1}{2}$ years pursuant to a guilty plea to burglary in the second degree because the originally-imposed sentence of $3\frac{1}{2}$ to 7 years was unlawful (*id.*). The Court of Appeals, in rejecting the defendant's attempt to vacate the plea on double jeopardy grounds stated, "That claim would be colorable only if the defendant's sentence had been increased beyond his legitimate expectations of what the final sentence should be" (*id.*). Since the sentencing court informed the defendant during the plea proceeding that he could receive a sentence of up to 15 years in prison, the sentence of $3\frac{1}{2}$ to $10\frac{1}{2}$ years was within his legitimate expectation of the final sentence (*id.*; *see also People v Collier*, 22 NY3d 429, 433-434 [2013], *cert denied* 573 US —, 134 S Ct 2730 [2014]). Indeed, in *Collier*, the Court of Appeals held that

"if the originally promised sentence cannot be imposed in strict compliance with the plea agreement, the sentencing court may impose another lawful sentence that comports with the defendant's legitimate expectations. Again, 'the reasonable understanding and expectations of the parties, rather than technical distinctions in semantics, control the question of whether a particular sentence imposed violates a plea agreement' " (*id.* at 434, quoting *Gammarano v United States*, 732 F2d 273, 276 [2d Cir 1984]).

■ Here, defendant was told that he could receive up to 12 years' imprisonment if he failed to comply with the conditions set by the court. In fact, he was expressly warned during the plea proceedings that if he committed another crime before the sentence was pronounced he could be sentenced up to 12 years, that he would not get his plea back, and that the court would decide the appropriate sentence. Thus, the six-year statutory minimum sentence finally imposed after defendant violated the conditions of the plea was clearly within the legitimate expected sentencing range of up to 12 years (*Collier*, 22 NY3d at 434; *see also People v DeValle*, 94 NY2d 870, 871-872 [2000]). The dissent focuses on the promised sentence of three years. However, this was a conditional plea agreement and defendant violated the conditions of the plea. Thus, he was no longer entitled to the three-year sentence. Because the final sentence was lawful and within the expectations of the parties, defendant's plea did not violate his due process rights. More succinctly, because defendant violated the conditions of the plea, "there could be no expectation of finality on his part with respect to the lesser and illegal sentence" (*People v Williams*, 87 NY2d at 1015).

Notably, the Court of Appeals' binding rulings in *Williams*, *Collier*, and *DeValle* are controlling law and dispositive of defendant's due process claim. The dissent relies on the dissenting opinion to the Court of Appeals' decision remitting this case to us (*see People v Williams*, 27 NY3d at 225-235), to refute these rulings. However, even that dissenting opinion recognized that a sentencing court has the power to correct an illegal sentence (*id.* at 228). Further, that dissenting opinion addresses the situation where a defendant violates a condition of the plea, and citing *People v Murray* (15 NY3d 725 [2010]), recognizes that when a defendant is told a plea is conditional, and advised of the sentence to be imposed should the defend-

ant violate the terms, the court may properly issue an enhanced sentence pursuant to the terms of the plea deal (27 NY3d at 230).

Even if defendant had fulfilled the condition to be entitled to receive the promised sentence, it is settled that a "[d]efendant cannot rely on a promise by the court to impose a sentence which it could not lawfully impose" (*People v Bullard*, 84 AD2d 845, 845 [2d Dept 1981]), and "[the] courts have the inherent authority to remedy an illegal sentence by permitting modification to bring the sentence within the . . . sentencing range that the defendant understood would be available upon conviction" (*People v Richardson*, 100 NY2d 847, 851 [2003]). There is no basis to permit this defendant to withdraw his plea or to restore the parties to their status before the plea agreement was reached.

■ Further, defendant challenges the validity of the condition that he not commit a crime as unclear and nonspecific. He maintains that an objectively reasonable interpretation of that condition was that it meant not being convicted of a crime. Notably, however, after the court reviewed the conditions and the consequences of violating any of the conditions, defendant confirmed that he understood. That neither defendant nor his counsel expressed confusion or asked for clarification suggests that the meaning of that condition was clear. Further, the court in no way suggested that defendant would violate the plea agreement only if he pleaded guilty or was convicted of a crime after trial (*see People v Delgado*, 45 AD3d 496 [1st Dept 2007], *lv denied* 9 NY3d 1032 [2008]). Rather, the court made clear that it would not find a violation based upon an arrest, but would determine whether defendant had committed a crime, and it conducted a hearing for that purpose. Thus, the court properly enhanced defendant's sentence based on its finding that defendant had committed a crime, in violation of a specific, unambiguous condition of the plea agreement.

The dissent, relying on and quoting at length the dissenting opinion to the Court of Appeals' decision remitting this case to us (*see People v Williams*, 27 NY3d at 225-235), concludes that we should exercise interest of justice review because this case raises "significant public policy concerns" concerning "public confidence in plea bargaining" and a system that "tolerates unenforceable bargains."

However, precedential cases involving interest of justice review make clear that such review applies on a case-by-case

basis, and is not designed or intended to be used to resolve public policy concerns or for a system-wide fix (*see People v Harmon*, 181 AD2d 34, 36 [1st Dept 1992]; *see also* CPL 210.40). By way of analogy, the factors set forth in CPL 210.40 for considering whether to dismiss an indictment in the interest of justice reflect a "sensitive balance between the *individual* and the State" (*People v Clayton*, 41 AD2d 204, 208 [2d Dept 1973] [emphasis added]; *see People v Reyes*, 174 AD2d 87, 89 [1st Dept 1992]). While there may be legitimate concerns about our criminal justice system, the appropriate remedy to improving our system lies with the legislature or must be raised in a proper case.*

The dissent relies on *People v Rosado* (96 AD3d 547 [1st Dept 2012]) to support the position that we can exercise interest of justice review to "examine an unpreserved question that has importance beyond the individual case." However, the holding in *Rosado* deviates from our accepted and long established precedent regarding the extremely limited circumstances in which we should exercise interest of justice jurisdiction.

The numerous cases I cite below represent the long-standing precedent of this Court as to what circumstances warrant the exercise of interest of justice review notwithstanding the fact that CPL 470.15 does not set forth guidelines. *People v Ramos* (33 AD2d 344 [1st Dept 1970])—relied on by the dissent—predates CPL 470.15 and is based on section 527 of the Code of Criminal Procedure, in effect at that time. In any event, even *Ramos* recognized that "our ultimate concern should be the interests of justice in this particular case" (33 AD2d at 348). Moreover, in line with the cases set forth below, it was because the defendant's guilt in *Ramos* was unclear that we exercised interest of justice review, vacated the conviction and directed a new trial.

Indeed, it is settled that the discretionary act to vacate a conviction in the interest of justice is to be "exercised sparingly and only in that rare and unusual case where it cries out for fundamental justice beyond the confines of conventional considerations" (*People v Harmon*, 181 AD2d at 36 [internal

---

* Indeed, in its decision remitting the case to this Court, the Court of Appeals noted that the legislature was "aware that illegal sentences may sometimes be imposed and has created a mechanism to address this problem. That mechanism, CPL 440.40, authorizes the court, upon the People's motion, to vacate an illegal sentence within one year of imposition" (*People v Williams*, 27 NY3d at 225 n 3).

quotation marks omitted]; CPL 470.15 [6] [a]). In order to exercise our interest of justice jurisdiction, there must exist "special circumstances deserving of recognition" (*People v Chambers*, 123 AD2d 270, 270 [1st Dept 1986]). In other words, this Court will not exercise its interest of justice jurisdiction absent "extraordinary circumstances" (*People v Marshall*, 106 AD3d 1, 11 [1st Dept 2013] [internal quotation marks omitted], *lv denied* 21 NY3d 1006 [2013]).

This case and this defendant do not present special or extraordinary circumstances that would warrant exercising our interest of justice review power. In *People v Kidd* (76 AD2d 665 [1st Dept 1980], *appeal dismissed* 51 NY2d 882 [1980]), we exercised our interest of justice jurisdiction to reverse a conviction and dismiss an indictment where there were many "troublesome" inconsistencies with respect to the identification of the defendant (*id.* at 666, 669). Although we concluded that the conviction was supported by legally sufficient evidence, we were "left with a very disturbing feeling that guilt ha[d] not been satisfactorily established" and "that there [wa]s a grave risk that an innocent man ha[d] been convicted" (*id.* at 668). Accordingly, we could not let the conviction stand. Recognizing that we should not use our interest of justice review in a "capricious and whimsical" manner, we remarked "we think we do not overstep the line when we exercise our 'interest of justice' powers on the basis of so fundamental a consideration as guilt or innocence" (*id.* at 667). In sum, the exercise of interest of justice review must be warranted by the individual case in front of us, and must involve "special circumstances" such as the risk that an innocent defendant has been convicted. This is not such a case.

Moreover, defendant in this case is not a proper candidate for the Court to exercise our interest of justice review pursuant to CPL 470.15 (3) (c). The defendant was previously convicted of a violent felony—attempted criminal possession of a weapon in the second degree. His current conviction of criminal sale of a controlled substance in the third degree came about after defendant and two codefendants sold crack cocaine to an undercover police officer in or near school grounds. Defendant's factual allocution at the plea proceeding made clear that he was guilty of third-degree sale of a controlled substance and he never challenged his predicate felony status. Accordingly, there is no risk that an innocent defendant has been convicted.

Defendant also violated the plea agreement by committing a crime during the period between the plea and sentencing

proceedings. Even worse, recorded conversations from Rikers establish that, in an effort to avoid the consequences of his violation of the plea conditions, defendant sought to suborn perjury and arrange for the presentation of false testimony from friends and relatives of an alibi in connection with his postplea marijuana offense.

In sum, there is nothing rare or unusual about this case or this defendant. The plea proceedings do not raise a concern about defendant's guilt. Defendant was advised of the rights he was waiving by pleading guilty and affirmed he was pleading guilty of his own free will. Defendant was represented by counsel and received a favorable sentence. Finally, defendant violated the plea agreement by committing another crime and the final sentence imposed was both legal and within the range announced by the court. Nor has defendant presented anything to demonstrate that his case is extraordinary. These facts, coupled with defendant's failure to preserve the issue for review, fail to support the exercise of our discretion to review in the interest of justice, and militate against such exercise.

Accordingly, upon remittitur from the Court of Appeals, the judgment of the Supreme Court, New York County (Edward J. McLaughlin, J.), rendered January 24, 2012, as amended on February 1, 2012 and February 28, 2012, convicting defendant, upon his plea of guilty, of criminal sale of a controlled substance in the third degree, and sentencing him, as a second felony drug offender previously convicted of a violent felony, to a term of six years, should be affirmed.

RENWICK, J. (dissenting). This appeal stems from a bargained-for plea, which was based on an illegal minimum incarceratory sentence, offered as an inducement for defendant's waiver of his constitutionally protected rights, including the right to a jury trial. A divided panel of this Court reversed the judgment of conviction, based upon the guilty plea, on the ground that the plea violated due process because it was induced by an illegal promise (*People v Williams*, 123 AD3d 240 [1st Dept 2014], *revd* 27 NY3d 212 [2016]). The Court of Appeals, however, reversed our determination on the procedural ground that defendant "failed to preserve his current claim for appellate review" (27 NY3d at 214). The Court of Appeals remanded the case "for [our] consideration of the facts and issues raised but not determined on the appeal to th[is] Court" (*id.* at 225). The question before us now is whether we should exercise our discretion to examine the merits of defend-

ant's claim in the interest of justice. In my view, we should do so and find that the plea here violated defendant's due process rights. Accordingly, I respectfully dissent.

This case has its genesis in defendant's arrest on January 7, 2010, for allegedly selling drugs to an undercover police officer. On November 1, 2011, defendant entered into a plea agreement that required him to plead guilty to the top count of the indictment, criminal sale of a controlled substance in the third degree, a class B felony. In exchange, the trial court promised to sentence defendant to a definite term of imprisonment of three years and two years of postrelease supervision (PRS). In addition, as part of the plea agreement, the trial court permitted defendant to remain at liberty pending sentence. This was done with the understanding that defendant's sentence could be enhanced to a maximum prison term of 12 years, at the discretion of the sentencing court, if he failed to return to court for sentencing, failed to cooperate with the Department of Probation, or committed a crime.

Neither the trial court nor the parties realized that the agreed upon sentence, to be imposed if defendant complied with the conditions of the plea, was illegal. Specifically, defendant had previously been convicted of attempted criminal possession of a weapon in the second degree and adjudicated a predicate violent felony offender (*see* Penal Law §§ 110.00, 265.03 [3]; 70.02 [1] [b]). Under the circumstances, the correct incarceratory sentence range, for the crime to which defendant pleaded guilty, was from a minimum of 6 years to a maximum of 15 years (*see* Penal Law § 70.70 [4] [b] [i]).

After his plea, but prior to his sentence in this case, defendant was arrested in an unrelated matter. Soon thereafter, on November 17, 2011, the trial court held an *Outley* hearing to determine whether defendant had violated the plea conditions (*People v Outley*, 80 NY2d 702 [1993]). At the hearing, a police officer testified that he arrested defendant after observing him smoking marijuana with two other men while inside a public housing building. The District Attorney's Office, however, declined to prosecute defendant because he was not found in possession of any marijuana. Nevertheless, finding the police officer's testimony credible, the trial court determined that defendant had committed the crime of misdemeanor criminal possession of marijuana. Accordingly, the trial court found defendant in violation of the plea agreement and sentenced him to six years in prison, as well as two years of PRS, which the

court considered "an appropriate enhancement in view of all the things that went on related to this case." As indicated, on appeal, this Court sustained defendant's challenge to the validity of his plea but the Court of Appeals found the challenge unpreserved.

On remittitur from the Court of Appeals, we should find that the unpreserved issue should be considered as matter of discretion in the interest of justice. In civil cases (*see Bingham v New York City Tr. Auth.*, 99 NY2d 355, 359 [2003]), as well as in criminal cases (CPL 470.15 [3] [c]), it is within the power of the Appellate Division (unlike the Court of Appeals) as a matter of discretion, to consider, "in the interest of justice," claims that have not been preserved for appellate review. Even though the Appellate Division possesses interest of justice jurisdiction, this Court should "exercise[ ] [it] sparingly and only in that rare and unusual case where it cries out for fundamental justice beyond the confines of conventional considerations" (*People v Harmon*, 181 AD2d 34, 36 [1st Dept 1992] [internal quotation marks omitted]; *see also* 11 Carmody-Wait 2d § 72:142 at 353).

This is one of those rare cases that not only presents a meritorious claim of a violation of due process during the plea process, but also raises a claim of significant public policy concerns. As Court of Appeals' Judge Rivera decisively expressed in her dissent to the majority's reversal of this Court's determination on the prior appeal, the "judicial practice employed in defendant's case jeopardizes the public confidence in plea bargaining and the criminal justice system as a whole" (*People v Williams*, 27 NY3d at 225).

Moreover, while the Court of Appeals obviously did not examine the merits of defendant's claim, the dissenting Judges did. The dissent completely agreed with our view that the plea here violated defendant's due process rights when "the Judge at the plea hearing failed to ensure the defendant understood the direct sentencing consequences of the plea, and wrongly informed defendant that the offer was a legal minimum rather than one precluded by law" (*id.* at 225-226). As Judge Rivera cogently explained in her dissenting opinion:

> "The legitimacy of our 'bargain-for-sentence' criminal process is based on the assurance that where promises are made to induce a defendant's guilty plea, they are capable of being enforced. Without

such assurances defendants would be loathe to engage in a risky high-stakes negotiation involving trading personal liberty interests in exchange for no benefit at all. Thus, a criminal justice system that tolerates unenforceable bargains increases the potential 'detrimental effect on the criminal justice system that will result should it come to be believed that the State can renege on its plea bargains with impunity notwithstanding defendant's performance.' Similarly, because illegal sentencing promises can bear no assurance of enforcement, they undermine public confidence in plea bargains, and discourage defendants from entering these agreements. It is therefore crucial that 'the court in overseeing and supervising the delicate balancing of public and private interests in the process of plea bargaining' conduct its constitutional duty to ensure the lawfulness of promises leading to a defendant's incarceration. The judge here failed to fulfill his duty, and the sole remedy for the defect presented on this record is to vacate the plea" (*People v Williams*, 27 NY3d at 234-235 [citations omitted]).

On the merits of defendant's due process claim, the majority utters the hyperbolic statement that "the Court of Appeals' binding rulings in *Williams*, *Collier*, and *DeValle* are controlling law and dispositive of defendant's due process claim." Ironically, Court of Appeals' Judge Rivera also thoroughly refutes the majority's argument:

"The People further argue that a sentencing court has the inherent power to correct an illegal sentence. True enough, but a court could not have corrected the sentence to coincide with the plea offer. Put another way, defendant could not be legally sentenced to three years' imprisonment for the crime to which he pleaded guilty.

"Nevertheless, the People contend that under *People v Collier* if the original promise could not be imposed, the sentencing court could impose another lawful sentence as long as it 'comports with the defendant's legitimate expectations.' According to the People, under that principle, because defendant received the legal statutory minimum of six years,

the ultimate sentence imposed fulfilled his expectations of a 'minimum' sentence. The People apparently ignore that the original sentencing offer was a minimum of three years, not six, and that three years was the number of consequence to defendant. As this Court has recognized, 'the overwhelming consideration for the defendant is whether he [or she] will be imprisoned and for how long' " (*People v Williams*, 27 NY3d at 228-229 [citations omitted]).

Judge Rivera went on to state as follows:

"The Court's holding in *People v DeValle* (94 NY2d 870 [2000]) is not to the contrary. In that case, the Court held that the trial court had inherent power to correct an illegal sentence where defendant did not seek withdrawal of the plea, and also failed to establish detrimental reliance on the illegal sentence that could not be addressed by returning him to his preplea status, if he so desired. Here, defendant seeks the remedy the Court in *DeValle* recognized as appropriately available to the defendant on the facts of that case. Thus, unlike the defendant in *DeValle* who, in essence, demanded specific performance of an illegal sentence, defendant here seeks no more than what the law allows, namely to be returned to his preplea status" (*People v Williams*, 27 NY3d at 229 n 3).

Judge Rivera continued:

"In *Williams*, this Court rejected a defendant's challenge to a resentence that imposed an enhanced maximum period of incarceration directly within the period expressly explained to defendant at the time of the plea. As the facts of that case establish, defendant was originally sentenced to an illegal indeterminate prison term of 3½ to 7 years, and thereafter resentenced to a lawful term of 3½ to 10½ years' imprisonment. The Court concluded that defendant did not have a legitimate expectation of finality in the prior illegal sentence because the Judge had informed defendant in advance that he was pleading to a crime that, by law, allowed the Judge 'to impose a sentence of up to 15 years.' As relevant to the instant appeal, the defendant's

minimum of 3½ years' imprisonment went unchanged from the illegal sentence to the resentence. Thus, this Court properly focused on the defendant's maximum sentencing exposure" (*People v Williams*, 27 NY3d at 230 [citations omitted]).

Judge Rivera also stated as follows:

"The decisions in *Collier* . . . [and] *Williams* . . . presuppose that a defendant who pleads guilty while fully aware of the period of incarceration attached to the plea is making a choice to bargain away freedom for at least the minimum, and up to the maximum, as described by the court. In accordance with this guiding principle, defendant's plea must be vacated because it was based on a three-year illegal minimum sentence, which the court communicated as the lowest end of the applicable sentencing range" (*People v Williams*, 27 NY3d at 230-231).

Finally, contrary to the majority's allegations, it is appropriate for this Court to exercise interest of justice jurisdiction to examine an unpreserved question that has importance beyond the individual case. Indeed, this Court should not hesitate to review an unpreserved claim if this Court finds that the strong policy interest contained in the preservation rule should be tempered because of the unique public policy concerns implicated in a case. The recent pronouncement in *People v Rosado* (96 AD3d 547 [1st Dept 2012]) illustrates an instance in which this Court exercised interest of justice jurisdiction to examine an unpreserved claim because the issue in the case had importance beyond the individual case.

Specifically, in *Rosado*, this Court exercised its interest of justice jurisdiction to review an unpreserved claim of error in a jury instruction relating to the so-called "drug factory presumption" (*id.* at 548), which creates a rebuttable inference of constructive possession of certain drugs in open view by each person discovered in close proximity to the drugs (*see id.*; Penal Law § 220.25 [2]). The trial evidence in *Rosado* showed that, pursuant to the execution of a no-knock warrant, the police entered the defendant's small apartment and immediately saw him coming out of the bedroom (96 AD3d at 549). Ignoring a call to stop, he ran into the bathroom and slammed the door shut (*id.*). After breaking open the door, the police found him "hovering" over the toilet (*id.*). The police found $550 on his

person in denominations of $20 and $100 dollar bills (*id.*). Then, upon entering the small bedroom from where defendant had fled, the police saw, in plain view, two plastic containers that held glassine envelopes encased in rice (*id.*). Looking into the open bedroom closet they saw an additional clear plastic container with a see-through lid, also with glassine envelopes encased in rice (*id.*). A total of 95 glassines of cocaine and heroin were recovered (*id.*).

Without any objection from the defendant's counsel, the jury in *Rosado* was charged on the drug factory presumption with regard to the charge of criminal possession of a controlled substance in the third degree, which in this case required intent to sell, and seventh-degree possession, which required only simple possession (*id.* at 548). During its deliberations, the jury inquired whether the "definition of room presumption and constructive possession" applied "equally to the charges of possession in the third degree and the seventh degree," to which the court answered affirmatively (*id.*). The defense counsel not only did not object to the subsequent charge but even agreed with the court that the presumption applied to the third and seventh degrees (*id.* at 550). The jury convicted defendant of the seventh-degree possession counts, but acquitted him of the third-degree counts (*id.* at 548).

On appeal, the defendant argued that even if the instruction on the drug factory presumption was proper with regard to the charge of third-degree possession (intent to sell), the jury should have been instructed that the presumption did not apply to the charge of seventh-degree possession (simple possession) (*id.* at 547-548). He argued that the presumption was only intended to apply to possession charges containing a weight or intent element, not simple possession charges (*id.* at 548). Although this issue was unpreserved, this Court nevertheless considered it "in the interest of justice in order to clarify the scope of the drug factory presumption" (*id.*). This Court reversed the defendant's conviction and granted a new trial on the ground that the drug factory presumption was not intended to apply to a seventh-degree possession charge requiring only simple possession, and thus, the jury instruction was erroneous:

> "The underlying purpose of the drug factory presumption is to hold criminally responsible those participants in a drug operation who may not be observed in actual physical possession of drugs at

the moment the police arrive. We note that defendant was acquitted of the third[-]degree possession counts. We do not believe that the drug factory presumption was intended to apply to seventh-degree possession, because implicit in the idea of a drug factory is that drugs are being prepared for sale. Therefore it should only apply to crimes requiring intent to sell, or crimes involving amounts of drugs greater than what is required for misdemeanor possession" (*id*. [citations omitted]).

In this case, the policy concerns at issue are as strong or even stronger than those involved in *Rosado*. For this Court has the duty to assure "that where promises are made to induce a defendant's guilty plea, they are capable of being enforced" (*People v Williams*, 27 NY3d at 234-235).

The majority is wrong when it argues that *Rosado* deviates from the alleged "long established precedent regarding the extremely limited circumstances in which we should exercise [our] interest of justice jurisdiction." Indeed, contrary to the majority's suggestions, neither the CPL nor case law has established any rigid litmus test as to when we should exercise our interest of justice jurisdiction. "[I]nterest of justice" is nowhere defined in the statute (*see* CPL 470.15). Instead, as this Court expressed in *People v Ramos* (33 AD2d 344 [1st Dept 1970]), the Appellate Division's interest of justice power is "broad" and should be exercised "in accordance with the conscience of the court and with due regard to the interests of the defendant and those of society" (*id*. at 348). Accordingly, this Court explained, this Court has to look not only at the facts of the particular case but also to its "duty to correct any situation which casts a doubt upon the proper functioning of the courts in the administration of justice" (*id*.)—a statement remarkably pertinent to this case.

Applying these broad principles in *People v Ramos*, this Court found that allowing the defendant's guilty verdict to stand would cast such a "doubt" on the justice system because of the inconsistency between the jury's verdict and the trial court's statements of the defendant's innocence (*id*.). Specifically, the trial judge stated on the record that he believed the jury's guilty verdict was erroneous and the defendant was in fact innocent (*id*. at 346). However, because the Judge did not state his reasons on the record or set aside the verdict, there was nothing for this Court to review (*id*. at 346, 347-348).

Nevertheless, this Court exercised its interest of justice review because in the absence of "clear and convincing evidence" of guilt that could remove the Judge's doubt, reversal was required (*id.* at 348).

Thus, here, we should similarly exercise our discretion in the interest of justice. We should find, as we held when the case initially came before us on appeal, that "in view of the evident misunderstanding by the trial court and by the parties in this matter, resulting in defendant's incomplete understanding of the implications of entering a guilty plea, the appropriate course is to permit defendant to withdraw his plea and restore the parties to their status before the plea agreement was reached" (*People v Williams*, 123 AD3d at 247).

ANDRIAS and WEBBER, JJ., concur with TOM, J.P.; RENWICK and GESMER, JJ., dissent in an opinion by RENWICK, J.

Judgment, Supreme Court, New York County, rendered January 24, 2012, as amended on February 1, 2012 and February 28, 2012, affirmed.