People v Palmer (2018 NY Slip Op 00638)





People v Palmer


2018 NY Slip Op 00638


Decided on February 1, 2018


Appellate Division, First Department


Manzanet-Daniels, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 1, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman, J.P.
Sallie Manzanet-Daniels
Barbara R. Kapnick
Cynthia S. Kern
Anil C. Singh,JJ.


627/08 4583 

[*1]The People of the State of New York, Respondent, 
v
David J. Palmer, Defendant-Appellant.



Defendant appeals from the judgment of the Supreme Court, Bronx County (Patricia Di Mango, J. at plea; Michael Gross, J. at sentencing), rendered December 17, 2013, convicting him of sexual abuse in the first degree, and imposing sentence.



Robert S. Dean, Center for Appellate Litigation, New York (Mark W. Zeno of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Jennifer L. Watson and Rafael Curbelo of counsel), for respondent.



MANZANET-DANIELS, J.


Defendant was born in Jamaica in 1971, and immigrated to the United States in 1994, when he was 23 years old. The Department of Probation's presentence report indicates that defendant was born in Jamaica, that he was a citizen of Jamaica, and that his alien status was "undocumented".
Defendant has a long and documented history of mental illness, including schizophrenia and hallucinations. Among other things, he believes that he had the ability to heal others through his "exhaled gases," or what defendant refers to as his "vapor powers." From the time of his arraignment on March 31, 2008, until he pleaded guilty more than five years later, on December 6, 2013, defendant was repeatedly found unfit to assist in his own defense and confined to psychiatric prison wards. Even when found fit to proceed after a regimen of forced medication, doctors noted that he continued to suffer from persistent delusional and disordered thinking.
On December 6, 2013, defendant entered a plea of guilty to sexual abuse in the first degree, a class D felony, with the understanding that he would receive a 5-year sentence with 10 [*2]years' postrelease supervision. After swearing defendant in, the court asked whether he had the opportunity to consult with his attorney, to which defendant replied yes. He expressed satisfaction with the advice received from counsel.
In response to further questioning, defendant replied that he was pleading guilty of his own volition. The court asked defendant whether he understood the rights he was waiving by pleading guilty, and defendant replied in the affirmative. The court then asked whether defendant had committed the crime to which he was pleading guilty, and he replied yes. He denied being under the influence of drugs or alcohol.
When the court asked defendant whether he was a citizen of the United States, he summarily responded, "Yes, your Honor." Defense counsel did not correct defendant. While the dissent reads much into the bare-bones colloquy at the plea proceedings concerning defendant's immigration status, the matter was not further discussed.
On December 17, 2013, defendant appeared before a different judge and was sentenced in accordance with the agreement. The sentencing judge did not make inquiry concerning his immigration status, notwithstanding the indication in the presentence report that he was "undocumented."[FN1] When asked whether he wished to make a statement before the court imposed sentence, defendant made a reference to "the principles of [the] tree of life," and stated that he "was not getting response based upon what were the fullness of these principles," and asked that he "be obliged that I can care for these principles and use them for the best of my abilities and to help others." The court replied, "So noted," and did not probe further.[FN2]
On May 23, 2014, defendant was paroled to the United States Immigration and Customs Enforcement. At some point thereafter, he was released from immigration detention to postrelease supervision, and is currently detained at the Bronx Psychiatric Center.[FN3]
In People v Peque (22 NY3d 168 [2013], cert denied sub nom. Thomas v New York, 574 US &mdash, 135 S Ct 90 [2014]), the Court of Appeals held that before accepting a plea, due process requires that a court "apprise a defendant that, if the defendant is not an American citizen, he or she may be deported as a consequence of a guilty plea to a felony" (id. at 176). The Court reasoned that "fundamental fairness . . . requires a trial court to make a noncitizen defendant aware of the risk of deportation because deportation frequently results from a noncitizen's guilty plea and constitutes a uniquely devastating deprivation of liberty" (id. at 193). Accordingly, "a noncitizen defendant convicted of a removable crime can hardly make a voluntary and intelligent choice among the alternative courses of action'" unless informed of the possibility of deportation (id. at 192-193).
Defendant's statement to the court that he was a citizen did not absolve the court of its [*3]obligations pursuant to Peque. Notably, Peque did not condition the need to give this warning on whether or not the court has reason to believe the defendant is not a citizen. The warning mandated by Peque is required whether the defendant is a citizen or not. Indeed, the Court of Appeals recognized that in order to protect the rights of the large number of noncitizen defendants pleading guilty to felonies in the state, it was necessary to "make all defendants aware that, if they are not United States citizens," pleading guilty to a felony might lead to deportation (id. at 197 [emphasis added]; People v Diallo, 113 AD3d 199, 201 n 1 [3d Dept 2013]; see also People v Belliard, 135 AD3d 437, 438 [1st Dept 2016] [court required to give Peque warning even where defense counsel affirmatively represented, "It's not applicable in this case"]). As the Court noted, changes in immigration enforcement have increased the likelihood of deportation following a guilty plea (22 NY3d at 188). The Court observed that at the time of the passage of amendments to the Immigration and Nationality Act in 1996, the number of deportations flowing from criminal convictions was 36,909, whereas in 2011, the United States deported 188,382 noncitizens following their criminal convictions (id.). The Court further noted that since 1995, joint initiatives between state and federal authorities had enabled New York to transfer thousands of convicted noncitizens to ICE prior to the expiration of their prison terms (id.).
The dissent acknowledges that Peque contains broad language to the effect that a warning concerning immigration consequences is required whether or not the court has reason to believe the defendant is a noncitizen.
The dissent rests its argument on the premise, purportedly enunciated in People v Brazil, 123 AD3d 466 [1st Dept 2014], lv denied 25 NY3d 1198 [2015]), that a court is entitled to dispense with an admonition regarding deportation where the defendant "affirmatively misrepresent[s]" that he is a U.S. citizen (id. at 167). In Brazil, we found it "highly unlikely" that defendant believed himself to be an American citizen, given the lengthy discussion at a prior bail proceeding at which his status was discussed (id.). Brazil is a memorandum decision from which little can be divined [FN4]. In any event, it cannot be seriously alleged here that defendant purposefully misrepresented his immigration status as had, apparently, the defendant in Brazil. There is no indication that the defendant in Brazil suffered from mental illness or other defect which might call into question his ability to apprehend the effect of his statements; here, on the other hand, defendant suffers from persistent delusions, including a belief that he has "vapor powers." These clear indications of persistent symptoms of mental illness, which were recognized even by the examining psychiatrists who found defendant competent to stand trial, warranted a more probing inquiry concerning his immigration status, particularly where court records indicated that defendant was "undocumented" and at risk of deportation for a felony conviction, and at the time of sentencing he gave a rambling monologue concerning his powers and "the principles of the tree of life."
The dissent also fails to recognize the import of Belliard, wherein we found that a court was required to give a Peque warning even where defense counsel affirmatively represented that "[i]t's not applicable in this case" (135 AD3d at 438). The dissent reasons that "It's not applicable" is not a representation as to citizenship status. Erroneously stating, "It's [i.e., Peque] not applicable," and incorrectly representing the defendant to be a citizen are distinctions without a meaningful difference.
We accordingly hold the appeal in abeyance pending remand for a prejudice hearing. [*4]Defendant should be afforded the opportunity to move to vacate his plea upon a showing of a "reasonable probability that, had the court warned the defendant of the possibility of deportation, he or she would have rejected the plea and opted to go to trial" (Peque, 22 NY3d at 176).
Accordingly, the appeal from the judgment, Supreme Court, Bronx County (Patricia Di Mango, J., at plea; Michael Gross, J., at sentencing), rendered December 17, 2013, convicting defendant of sexual abuse in the first degree, and sentencing him to a term of five years, should be held in abeyance, and the matter remitted for further proceedings in accordance herewith.
All concur except Friedman, J.P. who dissents in an Opinion.




FRIEDMAN, J.P. (dissenting)


In 2008, defendant, then in his mid-thirties, was indicted for several sex crimes, including an alleged rape, perpetrated against his much younger half sister in three separate incidents that occurred over a four-year period. For five years thereafter, the prosecution stalled due to defendant's repeated failures to take the medication prescribed to control his long-standing mental illness. Finally, in 2013, after defendant became compliant with his medication schedule, two examining psychiatrists attested to his fitness to stand trial, an opinion that is uncontradicted on the existing record. Defendant's counsel and the prosecutor subsequently negotiated a highly favorable plea agreement, under which defendant would plead guilty to one count of sexual abuse in the first degree (Penal Law § 130.65[2]), for which he would receive a determinate sentence of five years of imprisonment — time he had already served while in detention — and 10 years of postrelease supervision.
On December 6, 2013, defendant pleaded guilty to the agreed-upon charge. At the plea hearing, defendant answered the court's questions directly and responsively, conducted himself appropriately, and did not manifest any symptoms of the mental illness for which he was being treated. He swore to tell the truth, the whole truth and nothing but the truth, and then admitted to having had sexual intercourse with his half sister while she was incapable of consent by reason of being physically helpless. Shortly after allocuting to this crime, the court asked defendant, "Are you a citizen of the United States?" To this question, defendant answered, "Yes, your Honor."
In fact, contrary to what he told the court at the plea hearing, defendant was not a citizen of the United States. Therefore, had the court been aware of his true status, a warning by the court of the possible adverse immigration consequences of his plea should have been given under People v Peque (22 NY3d 168 [2013], cert denied sub nom. Thomas v New York, 574 US __, 135 S Ct 90 [2014]). However, because defendant told the court that he was a citizen (a representation that his counsel did not correct), the court did not give such a warning.[FN1] On appeal, defendant now argues that his guilty plea should be set aside because the court — misled by defendant's own misrepresentation that he was a citizen — failed to give him the warning mandated by Peque. Contrary to the majority's view and defendant's argument, this case is not controlled by Peque, which did not address a fact pattern in which a defendant inaccurately [*5]claims at his plea hearing to be a citizen. Rather, the applicable precedent is People v Brazil (123 AD3d 466 [1st Dept 2014], lv denied 25 NY3d 1198 [2015]), a case this Court decided under Peque, in which we held that the failure to give a Peque warning does not constitute grounds for setting aside a plea where "[the] defendant affirmatively misrepresented to the court that he was a United States citizen" (id. at 467). Moreover, Brazil held that the failure to give a Peque warning in this scenario did not provide grounds for relief even if the misrepresentation had been innocent, since, "if that was [the defendant's] belief [i.e., that he was a citizen], he would not have had any reason to be concerned about deportation" (id.), and thus would not have been influenced by the warning had it been given.[FN2]
I am not persuaded by the majority's efforts to portray Peque as mandating a warning about the possible immigration consequences of a felony guilty plea in all cases, even where the court reasonably believes, based upon the defendant's own representation, that he or she is an American citizen. In none of the three cases under review in Peque did the defendant himself tell the court that he was a citizen, as the present defendant did here [FN3]. Thus, whether the failure to [*6]give a Peque warning renders a guilty plea infirm in a case such as the one at bar is a question left open by Peque itself.[FN4]
As previously noted, the question left open by the Court of Appeals in Peque was answered in the negative by this Court in Brazil. Defendant attempts to distinguish Brazil on the ground that, as he reads the case, "the record [in Brazil] established that [the] defendant [therein] was aware that his guilty plea had immigration consequences[.]" As the People correctly note, this attempted distinction is untenable. First, there is no indication in the Brazil decision that the possibility that the defendant in that case actually had been aware of the potential immigration consequences of his plea, even without a Peque warning, played any role in our disposition of that appeal. Moreover, in deciding Brazil, this Court, as previously noted, expressly held that the court's failure to give him a Peque warning afforded no grounds for relief even if "[he] mistakenly believed he was an American citizen" (123 AD3d at 467). We explained that, "if that was his belief, he would not have had any reason to be concerned about deportation" (id.), and therefore would not have been influenced by the warning had it been given.[FN5]
Defendant also attempts to distinguish Brazil on a different ground, namely, that the defendant in Brazil, unlike defendant here, did not suffer from mental illness at the time of his [*7]plea. In this regard, defendant points to evidence that, in this case, his treatment, even after the competency finding, had not negated all of his symptoms. In particular, defendant notes that the psychiatrists who found him competent acknowledged that he continued to express certain delusional beliefs, such as his claim to possess mystical healing powers. Notwithstanding this persisting symptom of his illness, the examining psychiatrists, counsel and the court all were satisfied that defendant would be able to assist in his defense at trial or, alternatively, to enter a guilty plea knowingly and voluntarily. Further, as previously noted, defendant's speech and conduct at the plea hearing were appropriate in all respects. Nonetheless, defendant argues that his psychiatric history should have alerted the court — even as it relied on defendant's other statements at the plea hearing — not to rely on defendant for an accurate report of his immigration status. This factor, according to defendant, renders our holding in Brazil inapplicable. The majority finds this line of argument persuasive, but I do not.
Contrary to the majority's view, Brazil cannot be distinguished from this case on the ground that the Brazil defendant did not suffer from psychiatric illness. In the context of the determination in the present case that defendant — once compliant with his medication schedule — was competent, the majority's position that defendant's psychiatric condition meant that the court could not trust defendant's claim to be a citizen makes no sense. The psychiatric certification of his fitness to stand trial entitled the court to believe defendant when he admitted to having committed a felony sex offense and when he stated that he understood the significance of his waiver of the right to defend himself at trial and of his acceptance of the consequences of the guilty plea. I fail to see how defendant could have been qualified to make definitive representations to the court on these matters of the gravest consequence to himself while, at the very same time, according to the majority, his representation that he was a citizen could not be relied upon without "a more probing inquiry." The majority offers nothing to square this circle.[FN6]
When one considers the foregoing inconsistency in the majority's position, it becomes plain that defendant's Peque argument is a disguised attack on the competency finding that enabled him to enter the guilty plea in the first place. However, as defendant himself acknowledges, a direct appeal from the judgment is not the proper avenue for an initial attempt to have a guilty plea set aside on the ground that the plea was not entered knowingly and voluntarily. Such a claim — except in the "rare case" where the record of the allocution itself "calls into question the voluntariness of the plea" (People v Lopez, 71 NY2d 662, 666 [1988]) — must be preserved for appellate review (see CPL 470.05[2]) by first being raised in the trial court by a motion to withdraw the plea before sentencing (CPL 220.60[3]) or by a motion to vacate the judgment after sentencing (CPL 440.10; see Peque, 22 NY3d at 182; see also People v Williams, 27 NY3d 212, 214 [2016]; People v Davis, 24 NY3d 1012 [2014]; People v Toxey, 86 NY2d 725, 726 [1995]; People v Douglas, 148 AD3d 822, 822- 823 [2d Dept 2017]; People v Jackson, 114 AD3d 807 [2d Dept 2014], lv denied 22 NY3d 1199 [2014]; People v Ovalle, 112 AD3d 971, 972 [2d Dept 2013], lv denied 23 NY3d 966 [2014]). Here, defendant has not made a motion of either kind.
Notably, defendant himself does not go so far as to argue that the existing record on this direct appeal provides an evidentiary basis for vacating his guilty plea on the ground that the [*8]psychiatric report finding him competent was erroneous. The final report preceding defendant's plea concluded that, as of that time, defendant's medication had brought his illness under control to the extent that, while he was "still having some residual delusional thinking of [a] religious nature[,] . . . he d[id] not directly link this type of thinking to his charges." The two examining psychiatrists who signed this report found that defendant's
"residual symptoms . . . d[id] not interfere with his ability to stand trial. He was able to demonstrate understanding of court procedures; plea options, his charges, the role of court personnel and has indicated that he will work with his attorney in resolving his legal issues."
With respect to plea options, the psychiatrists found:
"[Defendant] was able to describe four plea options available to him with the understanding and implications of these options. He understands the guilty and not guilty plea options. He understands that if he accepts an insanity plea it means that he will be sent to a hospital and that he was sick at the time the crime was committed. He also knows that if he takes a plea bargain it means that he has to plea[d] guilty to a lesser charge and does less time."
Nothing in the existing record contradicts the examining psychiatrists' expert finding that, at the relevant time, defendant's illness was sufficiently controlled by his medication to render him fit to stand trial or, alternatively, to enter a guilty plea. Although earlier psychiatric reports had found defendant incompetent during periods when he was refusing to take his medication, the record contains no medical evidence to contradict the opinion stated in the final report before the plea that defendant's illness had finally been brought under sufficient control to render him competent. Further, the aforementioned "rare case" exception to the preservation rule noted in Lopez does not apply here (71 NY2d at 666), since defendant's plea allocution does not cast doubt on the finding of competency or otherwise throw into question the voluntariness of his plea. To reiterate, the record reflects that, at the plea hearing, defendant responded appropriately and logically to all of the court's questions; that he engaged in no disruptive or improper behavior; and that he made no delusional statements.[FN7]
The trial court was entitled to rely on the most recent psychiatric report finding defendant competent, as well as its own observations at the plea hearing, to conclude that defendant was able to understand the charges against him, to assist in his defense, and to comprehend the consequences of the plea (see People v Jimenez, 144 AD3d 402, 403 [1st Dept 2016], lv denied 29 NY3d 1128 [2017]). It logically follows that the court was entitled also to presume defendant's ability to understand its simple question concerning his citizenship status and to rely on him to give a truthful response to that question. While the majority complains that the "colloquy" at the plea hearing concerning defendant's immigration status was "bare-boned," I cannot see what was left to be discussed once defendant answered in the affirmative when asked whether he was a citizen. It was, after all, a yes-or-no question, and defendant's answer indicated to the court that the plea would have no immigration consequences. To reiterate, if defendant was competent to stand trial or to plead guilty to a felony (as two psychiatrists had determined), [*9]he was also competent to tell the court whether or not he was a citizen.[FN8]
Defendant's appellate brief, while acknowledging that this direct appeal is not the proper avenue for challenging the finding that he was competent, coyly suggests that his psychiatric history "might also call into question his competency to enter a knowing and voluntary guilty [plea]." Of course, defendant is free, if so advised, to move in Supreme Court to vacate his conviction under CPL 440.10(1)(e), based on an argument that the competency finding that enabled his plea was erroneous, assuming that he can marshal evidence from outside the existing record to support that conclusion (see CPL 440.10[2][c]). Defendant is not entitled, however, to pursue the same argument, in the guise of a Peque claim, on direct appeal, when the finding of his competence is uncontradicted on the existing record and, but for his own affirmative misrepresentation to the court taking his plea, there would be no Peque claim.
Unable to identify anything in the plea hearing transcript raising a genuine possibility of an infirmity in defendant's plea, the majority deems the record of the sentencing hearing to cast retroactive doubt on the validity of the plea. In this regard, the majority points to the presentence report's description of defendant as an "undocumented" alien, and apparently faults the sentencing court for failing to reconsider the validity of the plea in light of this postplea indication that defendant was not a citizen [FN9]. However, since defendant (who was represented by counsel at all times) did not move for leave to withdraw his plea at or before sentencing, the validity of the plea was not a matter for the sentencing court to consider [FN10]. Thus, the indication in the presentence report that defendant was not a citizen gave the sentencing court (which was not the same justice who had taken the plea) no reason to inquire into defendant's citizenship status, to investigate whether he had been given all appropriate warnings at the plea hearing, or [*10]otherwise to reexamine the validity of the plea.
Nor does defendant's single brief statement at the sentencing hearing cast doubt on the finding that he was competent. That statement — in which defendant referred to his "principles of tree [sic] of life" and stated that, "when these incidents occurred," he had "not [been] getting response based upon what were the fullness of these principles" — appears to have been intended as an apology for the sexual abuse of his half sister [FN11]. In any event, even if the statement is viewed as referring to defendant's belief in his mystical powers, it is consistent with the uncontradicted expert assessment in the competency finding that, as a result of his treatment, the delusional beliefs that defendant continued to express "d[id] not interfere with his ability to stand trial."[FN12]
An interesting question is raised by the majority's holding that, in spite of the uncontradicted expert finding of defendant's competence, an issue exists on this record as to whether the court should have relied on his claim to be a citizen. Specifically, if the record raises an issue as to the reliability of defendant's citizenship claim, would it not also raise an issue as to his ability to understand a Peque warning, had one been given? Stated otherwise, it seems to me that the logic of the majority's position would require us to remand for a hearing even if the court actually had given a Peque warning. Thus, the implication of the majority's decision is that the standard of competence for a noncitizen to plead guilty to a felony is somehow higher than the usual standard by which defendants are judged fit to stand trial. I see no basis, either in precedent or in justice, for establishing a standard of hypercompetence applicable only to noncitizens pleading guilty to felonies.
I further note that, as in Brazil, if defendant truly believed himself to be an American citizen (and whether he was merely mistaken or psychotically deluded in holding that belief), a Peque warning — which is specifically about the potential consequences of a guilty plea for noncitizens — would have had no effect on his decision whether to proceed with the allocution. [*11]As we stated in Brazil, one who believes himself or herself to be an American citizen does not "have . . . any reason to be concerned about deportation" (123 AD3d at 467). If defendant honestly held such a belief, he will be unable, upon remand, to make the showing required to have his conviction overturned — "the existence of a reasonable probability that, had the court warned [him] of the possibility of deportation, he . . . would have rejected the plea and opted to go to trial" (Peque, 22 NY3d at 176) — simply because, based on his mistaken belief in his citizenship, he would have understood the warning not to apply to himself. On the other hand, if defendant consciously misrepresented himself as a citizen to the court, I see no just reason to reward him for such calculated dishonesty by deeming the omission of the Peque warning — an omission that defendant himself induced — to provide grounds for vacating his plea.[FN13]
Finally, I acknowledge that the blanket rule that the majority attempts to draw from Peque — that the warning about the possible immigration consequences for a noncitizen of a guilty plea to a felony charge should be given to every defendant, citizen or noncitizen — might well make sense as a prophylactic measure to protect the interests the Court of Appeals recognized in that decision. However, as previously discussed, Peque itself did not impose such a rule, and even if such a rule were adopted, it would not necessarily follow that failure to give a Peque warning to a defendant who affirmatively misrepresented to the Court that he or she was a citizen would constitute grounds for vacating the plea [FN14]. In any event, in Brazil, this Court has already considered and rejected the argument that failure to give a Peque warning to a defendant who falsely claims to be a citizen at a plea hearing may constitute grounds for setting aside the plea. I believe that whether the rule of Peque should be extended to require all defendants to receive a warning is a policy determination that is best left to the Court of Appeals. In the meantime, this [*12]Court should adhere to its own applicable precedent. Accordingly, I would affirm the judgment, and I
respectfully dissent from the majority's order holding the appeal in abeyance and remanding the matter for a Peque hearing.
Appeal from judgment, Supreme Court, Bronx County (Patricia Di Mango, J. at plea; Michael Gross, J. at sentencing), rendered December 17, 2013, held in abeyance, and the matter remitted for further proceedings in accordance herewith.
Opinion by Manzanet-Daniels, J. All concur except Friedman, J.P. who dissents in an Opinion.
Friedman, J.P., Manzanet-Daniels, Kapnick, Kern, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 1, 2018
CLERK



Footnotes

Footnote 1: It is self-evident that the presentence report was prepared in the period immediately preceding sentencing, as the dissent notes. A purpose of such a report is to advise the sentencing court of any pertinent issues that might pose an impediment to the plea or to the sentencing proceedings.

Footnote 2: The dissent construes these statements concerning the tree of life as "an apology" for the sexual abuse of defendant's half sister, but there is no basis for this in the record.

Footnote 3: At argument, counsel indicated that the immigration authorities are awaiting a final decision of this Court before proceeding with deportation proceedings.

Footnote 4:Our characterization of Brazil as a memorandum decision is merely observational, and not, as the dissent extravagantly opines, an "implicit[] acknowledg[ment]" that it is indistinguishable from the present case.

Footnote 1:It bears mention that the plea hearing in this case took place less than a month after the Court of Appeals issued the Peque decision on November 19, 2013. Thus, it is clear that, in asking defendant whether he was a citizen, the plea court was attempting to comply with a new rule established by the Court of Appeals only 17 days before. When defendant told the court that he was a citizen, the court reasonably concluded that no Peque warning was needed, since a citizen cannot be deported.

Footnote 2:The majority, in resorting to the conclusory deprecation of Brazil as "a memorandum decision from which little can be divined," implicitly acknowledges that it cannot convincingly distinguish that case from this one. Moreover, the majority's position draws no support from People v Belliard (135 AD3d 437 [1st Dept 2016]). In Belliard, we remitted the matter for a hearing to determine whether a Peque warning would have influenced the defendant's decision whether to plead guilty or stand trial (see 22 NY3d at 176, 198) because defense counsel — not the defendant himself — told the court, inaccurately, that advice about the possible immigration consequences of the plea was " not applicable in this case'" (135 AD3d at 438). That statement, apart from the fact that the defendant himself did not make it, was not an affirmative misrepresentation that the defendant was a citizen. However, even if (as the majority contends) there is no "meaningful difference" between defense counsel's statement in Belliard and defendant's misrepresentation here, the majority fails to acknowledge that here, unlike in Belliard, defendant himself, not his lawyer, made the misrepresentation to the court. While we did not hold the Belliard defendant responsible for his counsel's misstatement on a matter of such great import, here, only defendant himself can be held responsible for personally misstating a factual matter within his direct knowledge, after solemnly swearing to tell the truth.

Footnote 3:While I acknowledge that two of the Court of Appeals' statements of its holding in Peque are more naturally read to extend the warning requirement to all defendants (see 22 NY3d at 176 ["due process compels a trial court to apprise a defendant that, if the defendant is not an American citizen, he or she may be deported as a consequence of a guilty plea to felony"]; id. at 197 ["trial courts must now make all defendants aware that, if they are not United States citizens, their felony guilty pleas may expose them to deportation"]), a third statement of the holding plainly limits it to noncitizen defendants (see id. at 176 ["a trial court must notify a pleading noncitizen defendant of the possibility of deportation"] [emphasis added]). In any event, none of the cases before the Court of Appeals when it decided Peque involved a defendant who personally misrepresented his immigration status to the court, and the Court's opinion nowhere discusses such a hypothetical fact pattern. Accordingly, Peque cannot be read to address whether the failure to give a warning constitutes grounds for relief where the defendant himself or herself has led the court to believe the defendant to be a citizen.

Footnote 4:I note that, if the basis of the majority's remitting of this matter for a Peque hearing is that every defendant — citizen and noncitizen alike — must receive a Peque warning, the majority's discussion of this particular defendant's psychiatric history would seem to be beside the point. The majority's focus on defendant's mental condition (which I address more fully later in this writing) suggests that the majority realizes that it is extending, and not simply applying, Peque.

Footnote 5:For the same reason, the majority cannot distinguish Brazil from this case based on our observation that it was "highly unlikely that [the Brazil] defendant mistakenly believed he was an American citizen" (123 AD3d at 467). As just noted, we expressly stated that we would reach the same result in Brazil "if that was his belief" (id.), i.e., even if that defendant actually did believe that he was a citizen.

Footnote 6:The majority states that the need for "a more probing inquiry" was indicated by, inter alia, "court records indicat[ing] that defendant was undocumented'." As more fully discussed below, the sole court record to which the majority refers is the presentence report, which was not in existence at the time of the plea hearing.

Footnote 7:Notably, defendant — who was not a stranger to the criminal justice system, having been convicted on a felony attempted narcotics sale charge in 1996 — made a cogently written pro se motion to dismiss his indictment on speedy-trial grounds in 2010, during a period in which he had been found unfit to stand trial.

Footnote 8:Notably, defendant's appellate counsel conceded at oral argument that nothing in the record of this case, up to and including the minutes of the plea hearing, indicates that defendant did not hold American citizenship. Nonetheless, defendant's appellate brief makes the puzzling suggestion that the court at the plea hearing should have been alerted to the possible unreliability of his claim to be a citizen by the notice it had of the facts (1) that he had been born in Jamaica in 1971, (2) that he had immigrated to this country in 1994 (about 14 years before his arraignment in this matter), and (3) that he spoke English with a Jamaican accent. Given the large number of naturalized citizens living in New York today, I cannot see how any of these facts cast doubt on defendant's representation that he was a citizen.

Footnote 9:In fact, according to the prosecution's uncontradicted representation at the argument of this appeal, defendant is not an undocumented alien but a legal permanent resident of the United States. In any event, on this appeal, it is undisputed that defendant is not an American citizen.

Footnote 10:Neither the majority nor defendant cites any appellate authority supporting the proposition that a sentencing court is required to reexamine the validity of a guilty plea entered by a counseled defendant in the absence of a motion, either by counsel or by the defendant pro se, for leave to withdraw the plea.

Footnote 11:The apologetic nature of defendant's statement at sentencing is apparent on the face of the record. When the court invited him to make a statement before sentence was imposed, defendant said: "I just want to say that I — you understand I went psychiatric treatment and I have been, you know, been experiencing a lot of different episodes and when, when these incidents occurred I was, you know, very unstable and was not under medication, oral medication. I try to reach to my — psychiatrically speaking, about the principles of tree of life. I was not getting response based upon what were the fullness of these principles and I just ask the Court that I be obliged that I can care for these principles and use them for the best of my abilities and to help others."

Footnote 12:It is also noteworthy that the record reflects that defense counsel conveyed to the sentencing court defendant's request that the court recommend that the Department of Correction not cut his hair, which he had grown long for religious reasons. This request demonstrates that, even if he continued to hold certain delusional beliefs, defendant was in touch with the reality of his situation and, to a significant extent, had the presence of mind to deal with it rationally and logically.

Footnote 13:Given the uncontradicted competency finding, I see no basis for the majority's assertion that there is no possibility that defendant "purposely misrepresented his immigration status." In any event, as just discussed, as was the case with the defendant in Brazil, if defendant here actually did believe that he was a citizen, a Peque warning would not have influenced him. I further note that, contrary to the majority's unfounded suggestion, no one on this bench is "alleg[ing]" anything about what was in defendant's mind when he answered the court's question about his immigration status.

Footnote 14:Certainly, even if a rule requiring the giving of a Peque warning to every defendant pleading guilty to a felony were adopted, a defendant holding American citizenship — or, as previously discussed, erroneously believing that he or she was a citizen — could not show that he or she was prejudiced by the omission of such a warning so as to warrant vacating the plea under the standard established by Peque. Neither an actual citizen, nor one genuinely but mistakenly believing himself or herself to be a citizen, would have reason to fear deportation, whether or not the warning had been given. Accordingly, such a person could not show "a reasonable probability that, had the court warned the defendant of the possibility of deportation, he or she would have rejected the plea and opted to go to trial" (22 NY3d at 176).