484

[900 NE2d 946, 872 NYS2d 395]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRYAN R. HAWKINS, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN EDUARDO, Appellant.

Argued October 21, 2008 and October 23, 2008; decided November 25, 2008

## POINTS OF COUNSEL

*Richard W. Youngman, Conflict Defender,* Rochester (*Kimberly Czapranski* and *R. Adrian Solomon* of counsel), for appellant in the first above-entitled action. I. Evidence that the victim suffered at least six hammer blows to the head with enough force to fracture his skull "like a hard boiled egg that you crack" established an intentional murder and no other crime. (*People v Payne,* 3 NY3d 266; *People v Lawhorn,* 21 AD3d 1289; *People v Gonzalez,* 1 NY3d 464; *People v Hafeez,* 100 NY2d 253; *People v Gray,* 86 NY2d 10; *People v Danielson,* 40 AD3d 174.) II. The chain of custody for blood swab "G" was broken when the police left the swab behind a filing cabinet at the crime scene for over four hours. The investigator's testimony did not provide reasonable assurances of the identity and unchanged condition of the swab. (*Amaro v City of New York,* 40 NY2d 30; *People v McGee,* 49 NY2d 48; *Durham v Melly,* 14 AD2d 389; *People v Felder,* 178 AD2d 936; *Mitulinski v Mitulinski,* 17 AD2d 238; *People v Brown,* 115 AD2d 610.) III. The trial court's *Sandoval* ruling that allowed the prosecution to specifically identify two of Mr. Hawkins's prior convictions as burglaries was an abuse of discretion. (*People v Sandoval,* 34 NY2d 371; *People v Dickman,* 42 NY2d 294; *People v Syposs,* 122 AD2d 600; *People v Cooke,* 101 AD2d 983; *People v Wood,* 94 AD2d 814; *People v Hicks,* 88 AD2d 519.) IV. The aggregate indeterminate 50 years to life sentence is harsh and excessive and should be reduced. (*People v Delgado,* 80 NY2d 780; *People v Prather,* 249 AD2d 954; *People v Galvin,* 249 AD2d 946; *People v Donhauser,* 255 AD2d 933; *People v Santiago,* 269 AD2d 770; *People v Thompson,* 60 NY2d 513.)

*Michael C. Green, District Attorney,* Rochester (*Kelly Christine Wolford* of counsel), for respondent in the first above-entitled action. I. Defendant's claim that his conviction for depraved indifference murder was based upon legally insufficient evidence is unpreserved for appellate review and therefore beyond

the review power of the Court of Appeals. (*People v Gray,* 86 NY2d 10; *People v Hines,* 97 NY2d 56; *People v Lawhorn,* 21 AD3d 1289; *People v James,* 75 NY2d 874; *People v Cochran,* 302 AD2d 276; *People v Gonzalez,* 1 NY3d 464; *People v Feingold,* 7 NY3d 288; *People v Register,* 60 NY2d 270; *Policano v Herbert,* 7 NY3d 588; *People v Payne,* 3 NY3d 266.) II. Defendant's conviction for depraved indifference murder was supported by legally sufficient evidence. (*People v Sala,* 95 NY2d 254; *People v Dekle,* 56 NY2d 835; *People v James,* 75 NY2d 874; *People v Register,* 60 NY2d 270; *People v Sanchez,* 98 NY2d 373; *Policano v Herbert,* 7 NY3d 588; *People v Hafeez,* 100 NY2d 253; *People v Suarez,* 6 NY3d 202; *People v Russell,* 91 NY2d 280; *People v Payne,* 3 NY3d 266.) III. The trial court properly found that the People established a sufficient chain of custody to permit the admission of a blood swab into evidence. (*People v Julian,* 41 NY2d 340; *People v Flanigan,* 174 NY 356.) IV. Defendant's claim that the trial court's *Sandoval* ruling was an abuse of discretion is unpreserved for appellate review and is otherwise without merit. (*People v Walker,* 83 NY2d 455; *People v Robles,* 38 AD3d 1294; *People v Alston,* 27 AD3d 1141; *People v Lebron,* 249 AD2d 147; *People v Moreno,* 278 AD2d 434; *People v Gray,* 86 NY2d 10; *People v Combo,* 291 AD2d 887; *People v Hayes,* 97 NY2d 203; *People v Sandoval,* 34 NY2d 371; *People v Mattiace,* 77 NY2d 269.) V. Defendant's claim that his sentence is unduly harsh or severe is not reviewable by this Court. (*People v Thompson,* 60 NY2d 513; *People v Rytel,* 284 NY 242; *People v Potskowski,* 298 NY 299.)

*Gregory C. Osakwe,* Hartford, Connecticut, for appellant in the second above-entitled action. I. The intermediate appellate court erred in its ruling that Mr. Eduardo's "challenge to the sufficiency of the evidence and all of his constitutional claims are unpreserved. (*People v Carter,* 40 AD3d 1310, 9 NY3d 873; *People v Gray,* 86 NY2d 10; *People v Riddick,* 34 AD3d 923, 9 NY3d 868; *People v Thompson,* 3 AD3d 511, 2 NY3d 747; *People v Bynum,* 70 NY2d 858; *People v Payne,* 3 NY3d 266; *People v Kirkpatrick,* 32 NY2d 17; *People v Hines,* 97 NY2d 56; *Boykin v Alabama,* 395 US 238; *Griswold v Connecticut,* 381 US 479.) II. The intermediate appellate court's finding that Mr. Eduardo's "entire course of conduct and interactions with his codefendants supported the conclusion that he was a participant in a drug operation, and that he assisted the others by acting as a lookout" is at variance with *People v Bello* (92 NY2d 523 [1998]). (*People v Danielson,* 9 NY3d 342; *People v Crum,* 272 NY 348; *Tibbs v Florida,* 457 US 31; *People v Noble,* 86 NY2d 814; *People*

*v Acosta*, 80 NY2d 665; *People v Steinberg*, 79 NY2d 673; *Matter of Kadeem W.*, 5 NY3d 864; *People v Mills*, 1 NY3d 269; *People v Mayo*, 36 NY2d 1002; *People v Kaplan*, 76 NY2d 140.)

*Robert M. Morgenthau, District Attorney*, New York City (*Patricia Curran* and *Susan Gliner* of counsel), for respondent in the second above-entitled action. The Appellate Division's findings that the verdict was supported by legally sufficient evidence and was not against the weight of the evidence should remain undisturbed. (*People v Gray*, 86 NY2d 10; *People v Cona*, 49 NY2d 26; *People v Bynum*, 70 NY2d 858; *People v Stahl*, 53 NY2d 1048; *People v Acosta*, 80 NY2d 665; *People v Tejeda*, 73 NY2d 958; *People v Contes*, 60 NY2d 620; *People v Allah*, 71 NY2d 830; *People v Kennedy*, 47 NY2d 196; *People v Montanez*, 41 NY2d 53.)

### OPINION OF THE COURT

Chief Judge KAYE.

The issue common to these otherwise unrelated criminal appeals is the preservation for this Court's review of defendants' challenge to the legal sufficiency of the evidence.

### *People v Hawkins*

On November 27, 2002, at approximately 2:00 P.M., Thomas Gallina called 911 and reported that someone with a hammer was breaking into his home. The operator heard Gallina yell for the intruder to leave and to let go, and then could hear only Gallina's moaning. When the police arrived shortly thereafter, they found Gallina, alone, on the kitchen floor in a pool of blood with several gruesome head injuries that later resulted in his death.

The police saw tire tracks on the driveway and footprints near various entrances to Gallina's house, which they later learned were defendant's. Meanwhile, from a doorway in the house a police investigator collected blood evidence on a swab, "G," placed it in a box marked "G," and set it on top of a filing cabinet in the study; police later learned it was defendant's blood. When the police left the house, the only people remaining there were family members, who cleaned up the broken glass, boarded up a broken window and locked the doors. None of them approached the filing cabinet where the swab was located.

Hours later, the police realized they were missing swab "G" and returned to the house, but it was locked. After obtaining a

key from Gallina's sister and entering the house, an investigator found box "G" behind the filing cabinet, between the cabinet and the wall, took it back with him to the police station and sealed the evidence. At trial, the investigator testified that the box he retrieved had not been opened because, had it been, the box would have been creased or "dog-eared." The swab was inside the box and appeared unchanged.

A grand jury indicted defendant for depraved indifference murder, felony murder and burglary in the second degree. At the close of trial, defendant moved for an order of dismissal as follows:

> "I respectfully submit that the People have failed to prove a prima facie case of Depraved Indifference Murder. Not only have they failed to prove a prima facie case that my client Bryan Hawkins was the perpetrator of the homicide . . . but they failed to prove that Mr. Hawkins acted with Depraved Indifference Murder in that matter."

After the trial court denied the motion, the jury convicted defendant of all three charged counts. The Appellate Division affirmed, 3-2, concluding that defendant's legal sufficiency claim was unpreserved and that the People had proved a chain of custody for the blood evidence (48 AD3d 1279 [2008]). One of the dissenting Justices granted leave to appeal, and we affirm.

### *People v Eduardo*

At 5:00 P.M. on April 13, 2005, Detectives Molina and Lansing, Sergeant Goggin, Undercover Officer 7567 and several other officers conducted a buy-and-bust operation in Manhattan. While driving around in an unmarked car, Molina and the undercover officer saw Adam Sanchez sell marihuana to an unidentified buyer on the sidewalk near where they were parked.

After the buyer walked away, the undercover exited the car. Sanchez called out "Weed." The undercover approached Sanchez asking "What do you have? Dimes?" Sanchez confirmed that he had "dimes," and the undercover requested two bags. Sanchez gave the undercover two bags of marihuana in exchange for $20 prerecorded buy money. When the undercover asked whether Sanchez was also selling cocaine, he said, "[G]ive me a few minutes." Sanchez then approached defendant and Freddy Perez, who were standing a few feet away, near a bodega. The undercover pretended to converse with Molina, who observed Sanchez, Perez and defendant talking to one another;

Perez walked west, while Sanchez and defendant stayed near the bodega.

During the brief time Perez was out of sight, Molina testified that defendant looked "westbound . . . eastbound . . . north and south." Perez then returned to the corner, where defendant stood, and placed a small object in the coin slot of a public telephone. Perez spoke to defendant and gestured to Sanchez. Sanchez then removed the object from the coin slot as defendant watched, "looking north and southbound." Sanchez gave Perez money, walked up to the undercover and handed her a clear bag containing cocaine, and the undercover gave Sanchez $30 in prerecorded buy money. During the cocaine transaction, defendant and Perez waited at the corner for a short time, then the two entered a double-parked van and drove away. Police pulled the van over, arrested defendant and Perez, and separately arrested Sanchez, who had $30 in prerecorded buy money and some marihuana. Laboratory tests proved that the purchase was cocaine.

A grand jury indicted all three defendants for criminal sale of a controlled substance in the third degree. At the close of the People's case at trial, defendant moved for a trial order of dismissal:

> "THE COURT: All right. So you move for a trial order of dismissal on the grounds that the people have failed to make out a prima facie case which is denied.
>
> "[COUNSEL]: Yes.
>
> "THE COURT: The defense rests. You move on the entire case beyond a reasonable doubt?
>
> "[COUNSEL]: Yes. . . .
>
> "[COUNSEL]: Just with respect to the failure of the people to make out a prima facie case, I know your Honor denied the motion. Just for the record essentially this case came down to an officer allegedly observing three people speaking on the street for a few minutes; then the defendant looking up and down the block. That hardly—
>
> "THE COURT: And then taking off with the guys in the car.
>
> "[COUNSEL]: Going with one of them in the car.

"THE COURT: The totality of the picture goes past prima facie. What do look-outs do? They look around. They swirl their necks in and out. They were talking. The three of them obviously are thick. They're together. He takes off with the guy in the— no, that's it. More than enough."

The jury convicted defendant of criminal sale of a controlled substance in the third degree. On defendant's appeal, the Appellate Division affirmed, holding that defendant's challenge to the sufficiency of the evidence and constitutional claims were unpreserved, and in any event lacked merit (44 AD3d 371 [2007]). A Judge of this Court granted defendant leave to appeal (10 NY3d 764 [2008]), and we affirm.

## Analysis

Preservation—or, more precisely, the lack of preservation—frequently accounts for the disposition of criminal cases in this Court. The issue, therefore, again merits some elaboration, not only to explain the result in the appeals before us but also in the interest of encouraging that a proper record be made in the first instance.

Analysis begins with the State Constitution's general limitation of the jurisdiction of the Court of Appeals to questions of law (NY Const, art VI, § 3; *see People v Belge*, 41 NY2d 60, 62 [1976]).[1] Among the kinds of determinations of reversal or modification deemed to be upon the law, the Criminal Procedure Law provides that "evidence adduced at a trial resulting in a judgment was not legally sufficient to establish the defendant's guilt of an offense of which he was convicted" (CPL 470.15 [4] [b]).

The Criminal Procedure Law further provides that a question of law arises in a criminal proceeding when

"a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

---

1. Exceptions include death penalty appeals and determinations of the Judicial Conduct Commission, where the Court of Appeals has factual review powers (NY Const, art VI, § 3 [a]; § 22 [d]; *see also* Karger, Powers of the New York Court of Appeals § 1:3, at 10 [3d ed rev]). By contrast to the Court of Appeals, intermediate appellate courts have factual review powers and interest of justice jurisdiction in criminal proceedings (CPL 470.15 [1], [6]).

Such protest need not be in the form of an 'exception' but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in re[s]ponse to a protest by a party, the court expressly decided the question raised on appeal" (CPL 470.05 [2]).

To preserve for this Court's review a challenge to the legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be "specifically directed" at the error being urged (*People v Gray*, 86 NY2d 10, 19 [1995]; *People v Hines*, 97 NY2d 56, 62 [2001]). As we have repeatedly made clear—and underscore again—general motions simply do not create questions of law for this Court's review (*see People v Finger*, 95 NY2d 894, 895 [2000]; *People v Bynum*, 70 NY2d 858, 859 [1987]; *People v Stahl*, 53 NY2d 1048 [1981]; *People v Cona*, 49 NY2d 26, 33 n 2 [1979]).[2]

Sound reasons underlie this preservation requirement. As we stated in *Gray*, a specific motion brings the claim to the trial court's attention, alerting all parties in a timely fashion to any alleged deficiency in the evidence, thereby advancing both the truth-seeking purpose of the trial and the goal of swift and final determination of guilt or nonguilt of a defendant (86 NY2d at 20-21). A defendant's motion for a trial order of dismissal that specifies the alleged infirmity helps to assure that legally insufficient charges will not be submitted for the jury's consideration, and serves the overall interest in an efficient, effective justice system.

Viewing the preservation requirement in the context of the individual trial, it is defense counsel who is charged with the single-minded, zealous representation of the client and thus, of all the trial participants, it is defense counsel who best knows the argument to be advanced on the client's behalf. Viewing the

---

**2.** By contrast, a defendant does not have to specifically object to errors that affect the mode of trial proceedings. As we explained in *Gray*, a mode of proceedings issue

"goes to the general and over-all *procedure* of the trial, forbidding alteration of mandated procedural, structural, and process-oriented standards. The examples [of mode of proceedings errors]—changing of the burden of proof, . . . deviation from State constitutionally mandated requirements for an indictment—show that the claimed errors [of legal insufficiency] should not fall within that exception" (86 NY2d at 21-22).

Legal sufficiency errors affect the substance, not the mode of proceedings, of the trial.

preservation requirement systemically, intermediate appellate court review is potentially comprehensive, including not only law questions but also fact issues and the interest of justice. This Court's second level of review—"to authoritatively declare and settle the law uniformly throughout the state"[3]—is best accomplished when the Court determines legal issues of statewide significance that have first been considered by both the trial and the intermediate appellate court.

Applying these principles to the facts before us, when Hawkins' counsel objected that the People "failed to prove that Mr. Hawkins acted with Depraved Indifference Murder," that motion did little more than argue that the People failed to prove the essential elements of depraved indifference murder. The objection could have been directed at either the reckless mens rea element, or the objective circumstances evincing a wanton, depraved indifference to human life, and did not alert the trial court to the argument now being advanced: that defendant acted intentionally, not recklessly, in killing the victim. Defendant did not preserve that legal question for our review.

*People v Eduardo* presents a different scenario. While defendant Eduardo raised no constitutional claims at trial, his legal sufficiency claim is in fact preserved, as the People now acknowledge. Defendant's effort to specify his objection was frustrated by the trial judge, who plainly was aware of, and expressly decided, the question raised on appeal (CPL 470.05; *People v Prado*, 4 NY3d 725, 726 [2004]). The preserved issue, however, lacks merit. While defendant argues that the conviction is legally insufficient because no one heard his conversation with Perez and Sanchez, he never handled money or drugs, and the police recovered neither drugs nor money from him, in evaluating the sufficiency of his conviction, we must view the evidence in a light most favorable to the People. Accordingly, a rational factfinder could have inferred from the evidence that, based on the timing, defendant's conversation must have been about the drug sale, defendant's looking around was for the purpose of detecting law enforcement, and that, by leaving the scene with Perez, defendant shared Perez's intent to sell drugs. Thus, the jury could have concluded beyond a reasonable doubt that defendant aided in the sale and shared a community of purpose with his codefendants to sell cocaine.

---

**3.** *Reed v McCord*, 160 NY 330, 335 (1899), quoted in Cardozo, Jurisdiction of the Court of Appeals of the State of New York, at 11 (2d ed 1909).

494

■ As for the remaining issues, Hawkins' claim that the People failed to establish the chain of custody for the blood swab is likewise meritless. Gaps in the chain of custody may be excused when circumstances provide reasonable assurances of the identity and unchanged condition of the evidence (*People v Julian*, 41 NY2d 340, 343 [1977]). Such gaps go to the weight of the evidence, not its admissibility. Here, the short time period between collecting and retrieving the lost sample from the home, when combined with a lack of evidence of tampering, was sufficient to establish the necessary foundation. Finally, defendant's *Sandoval* objection is unpreserved, as defendant made no objection to the court's ruling.

Similarly, Eduardo's contention that the Appellate Division did not correctly perform a weight of the evidence review is without merit.

Accordingly, the orders of the Appellate Division in *People v Hawkins* and *People v Eduardo* should be affirmed.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

In each case: Order affirmed.