People v Hang Bin Li (2017 NY Slip Op 07454)





People v Hang Bin Li


2017 NY Slip Op 07454


Decided on October 25, 2017


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 25, 2017
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
L. PRISCILLA HALL
SHERI S. ROMAN
JOSEPH J. MALTESE
VALERIE BRATHWAITE NELSON, JJ.


2013-03118
 (Ind. No. 603/08)

[*1]The People of the State of New York, respondent,
v
Hang Bin Li, appellant.


Paul Skip Laisure, New York, NY (Joshua M. Levine of counsel), for appellant.
Richard A. Brown, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, and Christopher J. Blira-Koessler of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Buchter, J.), rendered March 4, 2013, convicting him of manslaughter in the second degree and endangering the welfare of a child, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
On October 23, 2007, the defendant's then 2½-month-old daughter, Annie, was admitted to the emergency room of Flushing Hospital Medical Center with multiple injuries. Among other injuries, Annie's skull was fractured and her brain was bleeding. Additionally, she had diffuse bilateral retinal hemorrhages, a rib fracture, fractures in both of her legs, and damage to the nerves in her cervical spine. These injuries were consistent with abusive head trauma and shaken baby syndrome. On October 26, 2007, Annie was declared brain dead. On October 28, 2007, life support measures were removed and Annie died.
After providing a number of oral and written statements to the police, the defendant eventually admitted to the police that he "carelessly bump[ed Annie's] head on the night stand." The defendant was arrested and charged, inter alia, with manslaughter in the second degree and endangering the welfare of a child. He was later convicted, upon a jury verdict, of those charges.
The defendant's generalized motion to dismiss made at the conclusion of the People's case failed to preserve his challenge to the legal sufficiency of the evidence (see CPL 470.05[2]; People v Hawkins, 11 NY3d 484, 492). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt (see People v Caldavado, 78 AD3d 962, 963; People v Sulayao, 58 AD3d 769, 770). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The evidence presented by the People established that the defendant had one-on-one access to Annie during relevant time periods preceding her hospitalization. Further, the record is replete with evidence, including strong medical expert evidence, that Annie's death was a homicide caused by violent shaking and forceful impacts to her head. This proof, coupled with the defendant's devastating admission that he "carelessly bump[ed] her head on the night stand," was both legally and factually sufficient to sustain the jury's verdict.
The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
RIVERA, J.P., ROMAN and MALTESE, JJ., concur.
HALL, J., dissents, and votes to reverse the judgment, as a matter of discretion in the interest of justice, and dismiss the indictment, with the following memorandum, in which BRATHWAITE NELSON, J., concurs:
According to the evidence presented by the People, on the afternoon of October 22, 2007, the defendant called his friend Li Dong Yong and asked Yong if he could borrow some money so that he could take his two-month-old daughter Annie to the hospital. Yong went to the defendant's apartment, arriving at 8:00 p.m. The defendant's wife was taking care of Annie at the time. Yong testified that Annie looked a little pale, and that her eyes were closed. She was also making a "ki ki" sound. The defendant's wife told Yong that Annie's fever had already gone down, and that they wanted to wait until the next day to take her to the hospital. Yong slept over on a spare bed.
After midnight, Yong was awakened by the defendant screaming. Annie had turned blue, and Yong called the 911 emergency number. While awaiting an ambulance, the defendant attempted mouth-to-mouth resuscitation on Annie. The ambulance arrived and took Annie to the hospital, where she was diagnosed with abusive head trauma and shaken baby syndrome. She died several days later.
Neither the defendant nor his wife testified at trial. The People introduced into evidence written statements that the defendant made to the police. In one of these statements, the defendant recounted the activities of himself, his wife, and Annie during the 24 hours preceding Annie's hospitalization. In another, the defendant stated that after Annie turned blue, he carelessly bumped her head on a night stand.
Contrary to the majority's determination, we conclude that there was legally insufficient evidence to support the defendant's convictions of manslaughter in the second degree and endangering the welfare of a child.
In People v Wong (81 NY2d 600), there was evidence at trial that the two defendants were continuously present in an apartment with an infant and that one of the defendants had shaken the infant violently enough to produce fatal injuries (see id. at 604). However, because neither defendant gave a complete account of what had occurred, the People were unable to prove which defendant had administered the fatal shaking (see id.). The Court of Appeals concluded that the defendants' convictions of manslaughter in the second degree and endangering the welfare of a child were unsupported by legally sufficient evidence (see id.). In doing so, the Court found that there was no sound factual basis on which to hold the person who did not actually shake the infant criminally responsible for the infant's death (see id. at 610). This was because there was no proof from which the jury could infer that this "passive" defendant was aware that the infant had been violently shaken, since it was likely that at least one of the defendants would have left the room in which the infant was located at some point during the relevant period (id. at 609).
Here, as in Wong, the evidence showed that there were two adults present in the subject apartment during the relevant time period, i.e., the defendant and his wife. And there was no evidence establishing which of these adults administered the fatal shaking. While the defendant [*2]stated to the police that he carelessly bumped Annie's head on a night stand, the People's expert witnesses testified that a bump of a head on a night stand could not have been the cause of Annie's injuries. And while it is possible that the defendant told the police that he bumped Annie's head in order to cover up a crime, there was no evidence establishing that this crime was committed by the defendant as opposed to his wife. As in Wong, the defendant's "clumsy and transparent exculpatory effort[ ]" in this regard reflected, at most, his "guilty knowledge that a horrible crime had occurred in [his] apartment on the preceding night" (id. at 609).
Accordingly, I respectfully dissent.
ENTER:
Aprilanne Agostino
Clerk of the Court