# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 21
The People &c.,
     Respondent,
  v.
Jose Delorbe,
     Appellant.

Robin Nichinsky, for appellant.
Alexander Michaels, for respondent.
Immigrant Defense Project, amicus curiae.

GARCIA, J.:

"[D]ue process compels a trial court to apprise a defendant that, if the defendant is not an American citizen, he or she may be deported as a consequence of a guilty plea to a felony" (People v Peque, 22 NY3d 168, 176 [2013]).  However, before we may consider

- 1 -

whether a trial court fulfilled that obligation, we must determine whether a defendant preserved the claim as a matter of law for our review or whether an exception to the preservation doctrine applies (see id. at 182; see also NY Const Art VI, § 3 [a]; CPL 470.05[2]).  Here, service on defendant, in open court and months before the plea proceedings, of a "Notice of Immigration Consequences" form provided him with a reasonable opportunity to object to the plea court's failure to advise him of the potential deportation consequences of his plea, making the narrow exception to the preservation doctrine unavailable to him (see Peque, 22 NY3d at 182-183; see also People v Williams, 27 NY3d 212, 214 [2016]).  Therefore, because defendant did not preserve the claim he now raises, and because defendant's other contentions are without merit, we affirm.

I

In July 2011, the victim in this case arrived home and discovered an intruder.  She observed the perpetrator run from her bedroom and leave the apartment.  The victim later determined that money was missing from her apartment.  Police developed fingerprints from a box in the victim's bedroom, and a match was made to defendant.  He was arrested and charged with burglary in the second degree.

Defendant, who emigrated from the Dominican Republic to the United States at an early age and became a legal permanent resident, was arraigned in Supreme Court on the burglary charge in August 2011.  During the proceedings, the People filed a "Notice of Immigration Consequences" (the "Notice") with the court and provided a copy to defense counsel.  After defendant was arraigned, his counsel stated on the record that he was "handing [defendant] the [notice of] immigration consequences [form]," which the court

affirmatively acknowledged.    That Notice, provided to defendant in three languages (including English and Spanish), stated as follows:

> "*If you are not a United States citizen, a plea of guilty to any offense*, a conviction by trial verdict, or a youthful offender adjudication *subjects you to a risk that adverse consequences will be imposed on you by the United States immigration authorities, including, but not limited to, removal from the United States*, exclusion from admission to the United States, and/or denial of naturalization.  Because the immigration consequences applicable in your particular case may depend on factors such as your current immigration status, your length of residence in the United States, and your previous criminal history, you should consult with your attorney for advice specific to your circumstances.
>
> "The following are designated as deportable offenses . . . : . . .
>
> "[A]ny offense designated an 'aggravated felony' under 8 U.S.C. § 1101 (a) (43), including, but not limited to: . . . *burglary*, robbery, receipt of stolen property, or *any other theft-related offense* or crime of violence *for which a sentence of one year or more is imposed* . . . .
>
> "In addition, if the offense constitutes an 'aggravated felony,' or if you are not a lawful permanent resident of the United States (or have not been such for at least five years with at least seven years' continuous residency) and the offense is any deportable offense, there will be additional consequences, including, but not limited to, your ineligibility for discretionary cancellation of removal by the Attorney General" (emphases added).

After eight months and several calendar calls at which the People presented a plea offer to defendant, he appeared with counsel and pleaded guilty to attempted burglary in the second degree.  Despite his status as a second violent felony offender upon his second attempted burglary conviction (see Penal Law § 70.02 [1] [c]; Penal Law § 70.04 [1] [a]), the People did not seek to adjudicate defendant a predicate violent felon.  During the plea colloquy and allocution, which preceded this Court's decision in Peque, Supreme Court did not mention immigration consequences that could result from the conviction, nor did defendant ask about potential immigration consequences.  The following month, defendant

was sentenced to agreed-upon terms of five years of incarceration plus three years of post-release supervision. [1] He did not seek to withdraw his plea and, again, did not inquire about potential immigration consequences.

Four years later, defendant filed a pro se motion pursuant to CPL 440.10 to vacate his conviction. Defendant alleged that his counsel provided ineffective assistance because – according to defendant – she had neglected to inform him of potential immigration consequences resulting from his plea. Defendant asked Supreme Court to vacate his conviction or, in the alternative, to either require his counsel to submit an affidavit responding to his allegations or to appoint new counsel in the CPL 440.10 proceeding to assist with obtaining such an affidavit. Defendant's motion was supported by two cursory affidavits alleging that his counsel had "fail[ed] to inform [him] that pleading guilty could [affect him] in immigration" and "did not explain anything about [defendant] losing [his] residency."

Supreme Court denied defendant's motion, finding that his unsworn assertion in his supporting papers that, had he been informed of the immigration consequences of his plea, he would have asked his attorney to negotiate a plea with less severe immigration consequences was "conclusory" and "unsupported by any factual allegations regarding the significance that potential deportation holds for him or his incentive to remain in the United States," as required by the Criminal Procedure Law (see CPL 440.30 [4] [b]). In addition,

---

[1] Defendant was originally offered, and accepted, a sentence of five years of incarceration plus five years of post-release supervision. The term of post-release supervision was, however, limited by statute to a period of up to three years (see Penal Law § 70.45 [2] [e]).

the court noted that defense counsel had negotiated a particularly favorable plea deal, and succeeded in avoiding a sentence enhancement for defendant as a second violent felony offender (see generally Penal Law § 70.04). As a result, the court denied defendant's motion without a hearing.

The Appellate Division unanimously affirmed both defendant's conviction on his direct appeal – concluding that his Peque claim was unpreserved – and Supreme Court's summary denial of defendant's CPL 440.10 motion (see People v Delorbe, 165 AD3d 531, 531 [1st Dept 2018]). According to the court, provision of the Notice to defendant meant that his direct appeal did not fit within "the narrow exception to the preservation requirement" set forth in Peque, as defendant had been given "the opportunity to raise the issue" of the plea court's failure to inform him that his plea could lead to immigration consequences (id.). The Appellate Division also held that Supreme Court providently exercised its discretion in denying the CPL 440.10 motion without a hearing, as defendant had "alleged no facts to support his claim that had he known that his guilty plea could result in his deportation, he would not have pleaded guilty and instead would have proceeded to trial, and his conclusory allegations were insufficient to warrant a hearing" (id.).

A Judge of this Court granted defendant leave to appeal (People v Delorbe, 32 NY3d 1125 [2018]).

II

Defendant argues that he was not required to preserve his due process claim that the trial court failed to inform him of potential adverse immigration consequences as a result of his conviction (see Peque, 22 NY3d at 176). We disagree.

In <u>Peque</u>, based on our "review of the characteristics of modern immigration law and its entanglement with the criminal justice system" (22 NY3d at 175), we held that "deportation is a plea consequence of such tremendous importance, grave impact and frequent occurrence that a defendant is entitled to notice that it may ensue from a plea" (<u>id.</u> at 176). We explained that while deportation is technically a collateral consequence of a conviction (<u>see</u> <u>id.</u> at 192), it "is an automatic consequence of a guilty plea for most noncitizen defendants; absent some oversight by federal authorities, a defendant duly convicted of almost any felony will inevitably be removed from the United States" (<u>id.</u>). A "fundamental injustice" would therefore result "from *completely* barring a noncitizen defendant from challenging his or her guilty plea based on the court's failure to advise the defendant that he or she might be deported as a result of the plea" (<u>id.</u> at 196 [emphasis added).

While emphasizing the importance of the trial court's role in apprising a defendant of potential deportation consequences to a plea, we made clear that a claim that the court failed to do so generally must be preserved (<u>id.</u> at 182; <u>see</u> <u>Williams</u>, 27 NY3d at 221 ["So it was that, in (<u>Peque</u>), we reiterated the general rule that, even where the defendant challenges a plea on voluntariness and due process grounds, he or she must preserve that challenge via timely objection depending on the circumstances of the case" (internal citation omitted)]). The preservation rule is grounded in the provision of the New York Constitution restricting this Court's jurisdiction to "the review of questions of law" (NY Const art VI, § 3 [a]). In turn, "a question of law arises in a criminal proceeding when 'a protest thereto was registered, by the party claiming error, at the time of such ruling or

instruction or at any subsequent time when the court had an opportunity of effectively changing the same'" (People v Hawkins, 11 NY3d 484, 491 [2008], quoting CPL 470.05 [2]). This requirement allows the trial court "an opportunity to correct any error in the proceedings below at a time when the issue can be dealt with most effectively" (People v Lopez, 71 NY2d 662, 665 [1988]). It also "preserve[s] limited judicial resources and avoid[s] untoward delay in the resolution of criminal proceedings" (id., quoting People v Michael, 48 NY2d 1, 6 [1979]). Lastly, it protects "the very real interest of the State in achieving finality in a criminal prosecution" (Lopez, 71 NY2d at 665, quoting Michael, 48 NY2d at 6).

"Generally, in order to preserve a claim that a guilty plea is invalid, a defendant must move to withdraw the plea on the same grounds subsequently alleged on appeal or else file a motion to vacate the judgment of conviction pursuant to CPL 440.10" (Peque, 22 NY3d at 182). While reiterating this rule in Peque, we also acknowledged that "where a defendant has no practical ability to object to an error in a plea allocution which is clear from the face of the record, preservation is not required" (id.). This exception to the preservation requirement, however, remains narrow (id. at 182-183; see Williams, 27 NY3d at 214 ["(A) narrow exception to the preservation requirement (is available) in rare cases where the defendant lacks a reasonable opportunity to object to a fundamental defect in the plea which is clear on the face of the record"]).

In the wake of Peque, we have reinforced these carefully circumscribed limits on exceptions to the preservation requirement in the plea context. In People v Pastor, we affirmed a defendant's conviction on the ground that his Peque claim was unpreserved (see

28 NY3d 1089, 1090 [2016]).  In so doing, we noted that the "[d]efendant . . . was informed before he pleaded guilty of the possibility that he could be deported as a result of his plea, and if he was confused about that issue, he was obligated to move to withdraw his plea on that ground before the sentencing court" (id. at 1091).  Similarly, in People v Williams, we clarified that the preservation requirement is triggered when a defendant has "an *opportunity* . . . to have discovered the error" he alleges occurred during the plea process (27 NY3d at 223 n 2).  We emphasized that this Court has "never held, either in the plea context or elsewhere, that the defendant's lack of *actual knowledge* that an error has occurred, despite an opportunity to learn of the error, may excuse the defendant from having to preserve his or her claim via objection" (id.).

This is not the "rare case[]" where the narrow exception to the preservation rule applies (id. at 214; see also e.g. People v Barry, 149 AD3d 494, 494 [1st Dept 2017] [provision of the Notice to defendant required defendant to preserve Peque claim]; People v Martinez, 148 AD3d 422, 423 [1st Dept 2017] [same]; People v Chelley, 120 AD3d 987, 988 [4th Dept 2014] [mention of possible deportation in pre-sentence report required defendant to preserve Peque claim]; People v Balbuena, 123 AD3d 1384, 1385 [3d Dept 2014] [mention of possible deportation in presentence investigation report and written appeal waiver required defendant to preserve Peque claim]; but see People v Mohamed, 171 AD3d 796, 797 [2d Dept 2019] [holding that references in appeal waiver form and by the court during the plea proceeding to possible "immigration consequences" of conviction did not provide defendant with "practical ability" to object and therefore defendant was not required to preserve his Peque claim]).  Rather, the detailed Notice, in English and

Spanish – physically handed, as the record makes plain, to defendant by counsel in open court months before his plea – gave defendant the opportunity to raise any questions he might have had regarding possible immigration consequences of his conviction. The very first sentence of the Notice explicitly told defendant that "a plea of guilty to any offense" could "subject[] [him] to a risk that adverse consequences w[ould] be imposed on [him] by the United States immigration authorities, including, but not limited to, removal from the United States . . . ." It further noted that, among other things, a conviction for "burglary . . . or any other theft-related offense . . . for which a sentence of one year or more is imposed" would be deportable.

Those unambiguous statements provided defendant with sufficient notice of possible immigration consequences, including deportation, of his conviction, giving him "a reasonable opportunity" to express concerns to the court – during either his plea or at sentencing – regarding those consequences (Williams, 27 NY3d at 214).[2] Defendant did not do so, nor did he move to withdraw his guilty plea. His Peque claim is therefore unpreserved as a matter of law, and "we cannot entertain his newly minted challenge to [his plea's] validity" (Peque, 22 NY3d at 183).

III

---

[2] "*[O]pportunity* . . . to have discovered the error" is the touchstone of a preservation analysis (Williams, 27 NY3d at 223 n 2). Because we hold that the Notice provided such an opportunity, we need not consider whether unsworn assertions in a *pro se* memorandum of law accompanying a CPL 440.10 motion alleging ineffective assistance of counsel, the denial of which is consolidated with a direct appeal, might provide a basis for concluding that a defendant had actual knowledge of possible immigration consequences for preservation purposes (see Concurring Op at 5-6).

Defendant also argues that Supreme Court abused its discretion in summarily rejecting his CPL 440.10 motion, which alleged that his counsel had provided ineffective assistance for failing to inform him of the possible immigration consequences of his guilty plea (see Padilla v Kentucky, 509 US 356 [2010]).  Defendant's argument is without merit. A CPL 440.10 motion asserting an ineffective assistance of counsel claim "must contain sworn allegations [alleging that the conviction was obtained due to deficient attorney performance that violated the state or federal constitutions], whether by the defendant or by another person or persons" (CPL 440.30 [1] [a]; see CPL 440.10 [1] [h]).  The court may deny a CPL 440.10 motion without conducting a hearing if "the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts" (CPL 440.30 [4] [b]).  Defendant's sworn affidavits supporting his CPL 440.10 motion contained only conclusory allegations, which – even if taken as true – did not include "all the essential facts" required to establish that he was entitled to any relief (CPL 440.30 [4] [b]; see also People v Zeh, 22 NY3d 1144, 1146 n * [2014]).  Supreme Court therefore acted within its discretion in determining on written submissions that the motion could be denied without a hearing (see People v Satterfield, 66 NY2d 796, 799 [1985]).

Defendant's further contention regarding a constitutional right to counsel to represent him in the CPL 440.10 proceedings is unpreserved for our review.

Accordingly, the order of the Appellate Division should be affirmed.

WILSON, J. (concurring):

As the majority acknowledges, the court's failure to advise Mr. Delorbe, before accepting his guilty plea, that the plea might have immigration consequences violated our rule that "trial courts must now make all defendants aware that, if they are not United States citizens, their felony guilty pleas may expose them to deportation" (People v Peque, 22 NY3d 168, 197 [2013]). Likewise, we are unanimous that the Notice of Immigration Consequences form, handed to Mr. Delorbe at arraignment, does not satisfy Peque's requirement that the trial court advise him of the potential for deportation arising from his guilty plea. The trial court's responsibility cannot be met by a prosecutor providing a form to the defendant (see Advisory Comm on Jud Ethics Op 10-196 [2011]; People v Roberts,

143 AD3d 843, 845 [2d Dept 2016]).  Thus, there is no question that Mr. Delorbe's plea violated Peque.

The issue in this case is purely one of preservation: was Mr. Delorbe required to preserve his Peque violation by moving to withdraw his plea?  I agree that he was, but this case does not present the stark question of whether the Notice of Immigration Consequences form he received, in the circumstances in which he received it, was sufficient to put him on notice that preservation was required.  The record contains far more powerful evidence that Mr. Delorbe was aware his guilty plea had potential immigration consequences—evidence that does not require us to speculate about the effect of the form on his knowledge.  Whether the prosecutor's delivery of the form at arraignment conferred sufficient knowledge on Mr. Delorbe to defease him of the exception to our preservation requirement, either in this case or generally, is not present here.

I.

In Peque, we recognized that "deportation is a plea consequence of such tremendous importance, grave impact and frequent occurrence that a defendant is entitled to notice that it may ensue from a plea" (22 NY3d at 176).  We recently reemphasized the "utmost severity" of deportation in People v Suazo when we extended a trial by jury right to defendants whose misdemeanor convictions might result in deportation (32 NY3d 491, 499-500 [2018]).

Peque held: "[t]o ensure that a criminal defendant receives due process before pleading guilty and surrendering his or her most fundamental liberties to the State, a trial court bears the responsibility to confirm that the defendant's plea is knowing, intelligent

and voluntary" (22 NY3d at 184). Although "a trial court need not engage in any particular litany when apprising a defendant pleading guilty of the individual rights abandoned, it must make certain that a defendant's understanding of the terms and conditions of a plea agreement is evident on the face of the record" (People v Lopez, 6 NY3d 248, 256 [2006]). If the record does not "affirmatively demonstrate defendant's understanding or waiver of his constitutional rights," then the plea at issue must be vacated (People v Tyrell, 22 NY3d 359, 366 [2013]; see People v Conceicao, 26 NY3d 375, 384 [2015]).

The touchstone for whether a defendant is required to preserve a Peque challenge to a plea agreement is the defendant's knowledge at the time of the plea.[1] Peque involved three unrelated appeals: Peque, Diaz and Thomas. We held that because Mr. Peque actually knew "of his potential deportation, and thus had the ability to tell the court, if he chose, that he would not have pleaded guilty if he had known about deportation, he was required to preserve his claim regarding the involuntariness of his plea" (Peque, 22 NY3d at 183). We expressly contrasted that to Mr. Diaz's situation, holding that because Mr. Diaz "did not know about the possibility of deportation during the plea and sentencing proceedings,

---

[1] Peque's rule "is grounded in the right to due process of law" (22 NY3d at 175). As with others waivers of constitutional rights which require knowledge of the right for a valid waiver (see Boykin v Alabama, 395 US 238, 243 [1969] [regarding the right to trial by a jury, the right to confront one's accusers, and the privilege against self-incrimination]; People v Harris, 61 NY2d 9, 17 [1983] [same]; Johnson v Zerbst, 304 US 458, 464 [1938] [regarding the right to assistance of counsel]; Carnley v Cochran, 369 US 506, 516 [1962] [same]; Miranda v Arizona, 384 US 436, 475-76 [1966] [regarding the right to remain silent]), the knowing relinquishment of a defendant's due process right is the *sine qua non* for a preservation requirement to attach (see People v Louree, 8 NY3d 541, 546 [2007] [a defendant can challenge the validity of a plea agreement if the defendant did not have knowledge of the plea's consequences, even if the defendant failed to preserve the challenge]).

he had no opportunity to withdraw his plea based on the court's failure to apprise him of potential deportation. Thus, [Mr. Diaz's] claim falls within …[the] narrow exception to the preservation doctrine" (id.; see also People v Williams, 27 NY3d 212, 234 [2016] ["…we (applied) an exception to the preservation rule because we could not 'shut our eyes to the actual or practical unavailability of either a motion to withdraw the plea' or a CPL 440.10 motion, noting that '*a defendant can hardly be expected to move to withdraw his plea on a ground of which he has no knowledge*'"] [describing and quoting People v Louree, 8 NY3d 541, 545-56 (2007)] [emphasis added]). Obviously, defendants who have no idea that a guilty plea carries with it the "potential" or "possibility" of deportation cannot be required to preserve an objection to the trial court's failure to advise them that the plea may subject them to deportation, because the constitutional violation is the failure to put them on notice of that very same potential consequence.

## II.

Here, even leaving aside the Notice of Immigration Consequences form, the record of Mr. Delorbe's consolidated direct appeal and CPL 440.10 motion conclusively demonstrates that Mr. Delorbe knew his plea carried with it the possibility of deportation.[2] He did not meet his burden to demonstrate that he had no knowledge of the potential for deportation; instead, in his CPL 440.10 motion papers, Mr. Delorbe made clear that, at the

---

[2] Because the direct appeal and the CPL 440.10 motion were consolidated, both records are likewise consolidated and available in determining all issues on appeal (see e.g. People v Evans, 16 NY3d 571, 575 [2011] [advising appellate courts to consolidate a direct appeal with a CPL 440.10 motion when the record of the 440.10 would be "relevant" to the direct appeal]).

time he entered his plea, he knew his plea would render him potentially deportable, bringing him in line with our treatment of Mr. Peque, not of Mr. Diaz.

Mr. Delorbe's CPL 440.10 submission, which he prepared himself, shows that he understood his plea carried the possibility of adverse immigration-related consequences, including eligibility for deportation, but that he mistakenly believed he would be a candidate for *discretionary* relief. Throughout his papers, Mr. Delorbe explained that he "did not receive a warning that his guilty plea would *defin[i]tely result in his deportation*"; that "there is no proof that plea counsel informed him that his plea of guilty *would result* in his deportation"; and about his lawyer's failure "to inform him that a plea to Attempted Burglary in the Second Degree would *subject him to automatic deportation* without the possibility of discretionary relief from removal" (440.10 Memorandum of Law, at A.48, A.54 [emphasis added]). Mr. Delorbe thus protests that he was not aware that "discretionary relief from deportation was unavailable for a person convicted of Attempted Burglary in the Second Degree" (id. at A.54), but the knowledge required by Peque is not knowledge of the specific adverse consequence that will definitely—or even likely—result from the plea. Peque makes clear that a defendant who knows of the "potential" or "possibility" of deportation must preserve a Peque claim by moving to withdraw the plea or taking some other step to object to it before a sentence is imposed.

The majority's rationale is based on a tenuous and unnecessary inference that Mr. Delorbe knew of the potential immigration consequences of his plea solely from the provision of the form to Mr. Delorbe at arraignment. Without knowing whether he read the form, whether he was able to take it with him when he returned to pretrial detention

shortly after receiving the form, or whether he had any recollection many months later, when allocuting to the burglary charge, that the form listed burglary as an offense with potential deportation consequences, it is difficult to make any firm assessment as to Mr. Delorbe's knowledge at the time of his plea based solely on the Notice of Immigration Consequences.

However, this case does not require us to make any such inference. Mr. Delorbe, in his CPL 440.10 motion papers, has very clearly and repeatedly stated that he actually knew, at the relevant time, that his plea presented a risk of deportation. Although he asserts he mistakenly believed that he would be eligible to apply thereafter for discretionary relief, not knowing that his deportation would be "automatic," he had enough knowledge to remove him from the exception to the preservation requirement. Our preservation rule, set out in Peque, turns on the knowledge of the "possibility" of or "potential" for deportation, not knowledge of the legal avenues by which deportation might be avoided. Indeed, even the constitutionally required statement the court failed to give here is just a "short, straightforward statement on the record notifying the defendant that, in sum and substance, if the defendant is not a United States citizen, he or she *may be* deported upon a guilty plea" (Peque, 22 NY3d at 197 [emphasis added]). It would be anomalous to hold that because Mr. Delorbe did not know the eligibility requirements for discretionary relief from deportation, he is exempted from having to preserve a claim that would have entitled him merely to what he already knew: that his plea might come with some unspecified risk of deportation. Like Mr. Peque, and unlike Mr. Diaz, Mr. Delorbe admittedly understood that his plea came with a risk of deportation. Because Mr. Delorbe, like Mr. Peque, "could

have preserved, and failed to preserve, his contention that the trial court's failure to apprise him that deportation was a potential consequence of his plea rendered the plea involuntary" (Williams, 27 NY3d at 221), we cannot consider his Peque claim.

Although Mr. Delorbe was sentenced before we decided Peque, CPL 220.50 (7) required the court to inform him of the possibility of "deportation, exclusion from admission to the United States or denial of naturalization pursuant to the laws of the United States." The court's failure to do so violated the statute. The preservation question raised here should never arise again, because Peque made clear the constitutional nature of the consequence of a failure to apprise a noncitizen defendant of the possibility of deportation, the severity of which we have again reaffirmed in Suazo. Courts, prosecutors and defense attorneys should now be fully aware of both the need to inform defendants of the potential for adverse immigration consequences and the remedy available to defendants who are unaware of the possibility of deportation when entering a plea. Moreover, both prosecutors and defense counsel should understand that, if the defendant is not a United States citizen and the court somehow omits mention at allocution or sentencing of the possibility of deportation consequences, it would behoove all parties to remind the court of Peque to ensure the validity of the plea.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order affirmed. Opinion by Judge Garcia. Chief Judge DiFiore and Judges Stein and Feinman concur. Judge Wilson concurs in result in an opinion in which Judges Rivera and Fahey concur.

Decided March 31, 2020