People v Esposito (2020 NY Slip Op 20351)

People v Esposito

2020 NY Slip Op 20351 [70 Misc 3d 74]

Accepted for Miscellaneous Reports Publication

Supreme Court, Appellate Term, Second Department, 2d, 11th 
and 13th Judicial Districts

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, March 17, 2021

[*1]

The People of the State of New York, Respondent,
v
Monique Esposito, Appellant.

Supreme Court, Appellate Term, Second Department, 2d, 11th and 13th Judicial Districts, December 23, 2020

APPEARANCES OF COUNSEL

Appellate Advocates (Michael Arthus of counsel) for appellant.
Michael E. McMahon, District Attorney (Morrie I. Kleinbart and Alexander Fumelli of counsel), for respondent.

{**70 Misc 3d at 75} OPINION OF THE COURT

Memorandum.

Ordered that the judgment of conviction is affirmed.
Defendant was charged in an information with, among other things, common-law driving while intoxicated (Vehicle and Traffic Law § 1192 [3]) and resisting arrest (Penal Law § 205.30).
At a jury trial, police officers testified that, after they had responded to a call regarding an automobile accident, they found defendant a few blocks from the scene of the accident, determined that she was the driver of the vehicle, and observed that she showed signs of intoxication. Defendant was transported to a hospital. Testimony, by a registered nurse, indicated that the nurse had drawn six vials of blood from defendant, sealed and labeled each vial with defendant's name and birth date, and handed the vials to the hospital laboratory.
Police Officer Murphy testified that, thereafter, he obtained a warrant for defendant's blood. He subsequently received a package containing vials of defendant's blood that had been sealed with tape across the top and labeled with defendant's name. He brought the package to the precinct in Staten Island and vouchered it into "IDTU." He sealed the kit and signed his name in order to avoid tampering with the package, and filled out an invoice number (5000071317) that was assigned to the package. He transported the package containing defendant's blood to the [*2]police laboratory in Queens for analysis. The package was never out of his sight after he received it from the hospital and delivered it to the police laboratory. A New York City Police Department criminalist testified that he came into{**70 Misc 3d at 76} possession of two vials of blood under sample number 5000071317 through the evidence control section of the police laboratory. The blood sample came in a kit that was signed and sealed, and within the kit were, among other vials, two vials of blood labeled with defendant's name and birth date. The blood test result admitted into evidence, over defense counsel's objection, indicated a blood alcohol content of .17 of one per centum by weight.
Following the trial, the jury found defendant guilty of common-law driving while intoxicated and resisting arrest. On appeal, defendant contends that the blood alcohol test result should not have been admitted into evidence since the People failed to establish a chain of custody of the blood vials used to test her blood alcohol content and their unchanged condition. In addition, defendant contends that the sentence imposed was unduly harsh and excessive.
"Proof of a complete chain of custody is one accepted technique for showing the authenticity of a fungible item of real evidence" (People v Julian, 41 NY2d 340, 343 [1977]), and this "generally requires that all those who have handled the item identify it and testify to its custody and unchanged condition" (People v Connelly, 35 NY2d 171, 174 [1974] [internal quotation marks omitted]). "The chain of custody of any blood sample must be established and the failure to do so may be excused only where the circumstances provide reasonable assurances of the identity and unchanged condition of the sample" (Amaro v City of New York, 40 NY2d 30, 35 [1976] [citation omitted]; see People v Julian, 41 NY2d at 343).
Here, while there is a gap in the chain of custody between the point where the nurse delivered the vials to the hospital laboratory and when Police Officer Murphy obtained the vials pursuant to the warrant, the testimony presented by the People established circumstances providing reasonable assurances of the identity and unchanged condition of the two vials of defendant's blood that were received at the police laboratory and tested to determine defendant's blood alcohol level (see People v Hawkins, 11 NY3d 484, 494 [2008]; People v Mancusi, 161 AD3d 775 [2018]). Under the circumstances, any gaps in the chain of custody go to the weight of the evidence, not its admissibility (see People v Hawkins, 11 NY3d at 494; People v Fuller, 165 AD3d 1163 [2018]). Consequently, the Criminal Court properly admitted the results of the blood alcohol test into evidence.{**70 Misc 3d at 77}
Finally, since defendant has fully served her sentence, the contention that the sentence was unduly harsh or excessive has been rendered academic (see People v McLaine, 64 NY2d 934 [1985]; People v Elgut, 164 AD3d 1360 [2018]; People v Vielman, 164 AD3d 623 [2018]).
Accordingly, the judgment of conviction is affirmed.

Weston, J.P. (concurring in the result in the following memorandum). While I concur with the majority in affirming defendant's conviction, I do not agree that the deficiencies in the chain of custody in this case were excusable. In my opinion, the record contains no reasonable assurances that blood samples drawn by the hospital nurse were the same as those tested by police to determine defendant's blood alcohol level. Although the trial court erred in admitting the results of the blood alcohol test into evidence, the error was harmless.
To establish the admissibility of real evidence, "the offering party must establish, first, [*3]that the evidence is identical to that involved in the crime; and, second, that it has not been tampered with" (People v Julian, 41 NY2d 340, 342-343 [1977]). While "[p]roof of a complete chain of custody is one accepted technique for showing the authenticity of a fungible item of real evidence," it is not exclusive (id. at 343). "Gaps in the chain of custody may be excused when circumstances provide reasonable assurances of the identity and unchanged condition of the evidence" (People v Hawkins, 11 NY3d 484, 494 [2008], citing People v Julian, 41 NY2d at 343). Thus, the lapse of several hours from the time police collected a blood swab to the time they retrieved it did not render the blood swab inadmissible, where the gap in time was short and the box containing the swab was undisturbed (see People v Hawkins, 11 NY3d at 494). Similarly, an unexplained three-year gap between a first chemical analysis and a second chemical analysis of an illegal substance did not render the substance inadmissible, where the substance "apparently remained safely under police control" and was stored in identifiable containers, and where the first chemical analysis was conducted after a complete chain of custody had been established (People v Julian, 41 NY2d at 343-344).
Here, however, there were too many uncertainties surrounding the handling of the blood samples to assure their authenticity. As the majority notes, there is a gap in the chain of custody from the time the nurse delivered the vials of blood to the hospital laboratory to the time Officer Murphy received the vials{**70 Misc 3d at 78} from the hospital. The People presented no proof from the hospital as to the manner in which the blood was handled or had been stored at the hospital. Casting further doubt on the authenticity of the blood samples is the fact that although the nurse drew six vials of defendant's blood, the police laboratory technician received only five vials: two of which were empty; two of which contained blood; and one of which contained serum. Although three of the vials were labeled with defendant's name and date of birth, it was readily apparent that they had been altered since one of the vials contained serum, and only two contained blood. Moreover, although the nurse testified that the vials were of different colors, the People offered no such description from either Officer Murphy or the laboratory technician. Indeed, the People had conceded at trial that it was likely that the hospital had used the blood. On this record, I cannot agree that the People established circumstances providing "reasonable assurances of the identity and unchanged condition" of the blood samples that were tested (People v Hawkins, 11 NY3d at 494).
Nevertheless, I concur in upholding defendant's conviction on the ground that the error in admitting the blood test results was harmless (see People v Byer, 21 NY3d 887, 889 [2013]). Defendant was convicted of common-law driving while intoxicated (Vehicle and Traffic Law § 1192 [3]), which does not require a chemical analysis of defendant's blood. Thus, even without the blood test results, the proof amply established defendant's guilt and there was no significant probability of an acquittal had the blood test results been excluded (see People v Byer, 21 NY3d 887 [2013]).
Accordingly, I concur and vote to affirm.
Elliot and Siegal, JJ., concur; Weston, J.P., concurs in a separate memorandum.